215 F.3d 1005 (9th Cir. 2000)
 PEOPLE OF THE STATE OF CALIFORNIA, by the Sacramento Metropolitan Air Quality Management District, Plaintiff-Appellant,
v.
UNITED STATES OF AMERICA; DEPARTMENT OF AIR FORCE; SACRAMENTO AIR LOGISTICS CENTER; MCCLELLAN AIR FORCE BASE, Defendants-Appellees.
 No. 99-15388
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted April 26, 2000
Filed June 14, 2000
 
 Kirk E. Trost, Hyde, Miller, Owen & Trost, Sacramento, California, for the plaintiff-appellant.
 Kathryn E. Kovacs, United States Department of Justice, Washington, D.C., for the defendants-appellees.
 William M. Dillon, Senior Deputy, County of Santa Barbara, Santa Barbara, California; David Schott, District Counsel, Monterey Bay Unified Air Pollution Control District, Monterey, California; Peter Mieras, District Prosecutor, South Coast Air Quality Management District, Diamond Bar, California; Terence G. Dutton, Senior Deputy, San Diego County Air Pollution Control District, San Diego, California; Robert N. Kwong, Bay Area Air Quality Management District, San Francisco, California; Michael W. Neville, Deputy Attorney General, State of California Air Resources Board; Andrew S. Bergman, Assistant Attorney General, Environmental Enforcement Section, Columbus, Ohio, for the amicus.
 Appeal from the United States District Court for the Eastern District of California; Frank C. Damrell, Jr., District Judge, Presiding. D.C. No. CV-98-00437-FCD(JFM)
 Before: Betty B. Fletcher, Arthur L. Alarcon, and Michael Daly Hawkins, Circuit Judges.
 ALARCON, Circuit Judge:
 
 
 1
 The People of the State of California by the Sacramento Metropolitan Air Quality Management District (the "Sacramento Air Quality District") appeal from the final order of the district court granting the motion of the Department of the Air Force, Sacramento Air Logistics Center, McClellan Air Force Base (the "United States") for summary judgment, and denying their cross motion for summary judgment. The Sacramento Air Quality District brought this action in state court under the California Health and Safety Code to recover civil penalties from the United States for the unauthorized emission of nitrogen oxides into the air. The United States removed this action to the district court pursuant to 28 U.S.C.S 1442(a)(1) (the "federal removal statute").
 
 
 2
 The district court dismissed the action on the basis that Congress had not waived the United States' sovereign immunity from liability for civil penalties imposed by states to punish past violations of state and local air quality laws. We hold that this action was improperly removed. We vacate the judgment with directions that this action be remanded to the state court, because we conclude that the district court lacked subject matter jurisdiction to consider the merits of this dispute.
 
 
 3
 * Congress enacted the Clean Air Act to protect and to enhance the quality of the nation's air resources and to promote the health, the welfare, and the productive capacity of its population. See 42 U.S.C. S 7401. Though the Clean Air Act establishes a federal framework for ensuring the nation's air quality, Congress vested the states with the primary responsibility of implementing its provisions. See 42 U.S.C. S 7407. The Clean Air Act specifically requires state and local governments to develop implementation plans and to adopt and enforce regulatory programs to attain and maintain the federal air quality standards established within their regions. See 42 U.S.C. S 7410; United States v. South Coast Air Quality Management Dist., 748 F. Supp. 732, 734 (C.D. Cal. 1990). It also preserves the authority of state and local governments to adopt and enforce their own air quality standards and limitations provided that the requirements are no less stringent than those prescribed by the federal government. See 42 U.S.C. S 7416; South Coast Air Quality Dist., 748 F. Supp. at 734. States that fail to satisfy the minimum federal air quality standards risk losing valuable federal funding. See 42 U.S.C. S 7509.
 
 
 4
 In California, air quality standards and limitations are governed by both the Clean Air Act and state and local air quality laws. The state divides responsibility forimplementing and enforcing those standards among a state agency, the California Air Resources Board, and thirty-five local air quality districts. See Cal. Health & Safety Code SS 39002, 39003. The Sacramento Air Quality District is the local agency with primary responsibility for controlling air pollution from all stationary sources, for improving air quality, and for enforcing local rules, regulations, and applicable state and federal laws relating to the ambient air quality of Sacramento County, California. See Cal. Health & Safety Code SS 40001, 40960, 40961. To that end, the Sacramento Air Quality District has established a program which requires the issuance of permits prior to the construction or operation of any equipment that may emit air pollutants. See Cal. Health & Safety Code S 42300. To ensure compliance, the Sacramento Air Quality District is authorized to assess and recover civil penalties against any person who violates its rules, regulations, permit conditions, or orders. See Cal. Health & Safety Code SS 42402-42403. Each day of a violation is treated as a separate offense, and depending on the type of violation, each offense is punishable by a maximum penalty of either $1,000 or $10,000. See Cal. Health & Safety CodeSS 42402-42403.
 
 
 5
 The facts of this case are not in dispute. The United States operates the McClellan Air Force Base in Sacramento County and is subject to the conditions and requirements established by the Sacramento Air Quality District for the construction and operation of equipment that may emit air pollution. On January 9, 1996, the Sacramento Air Quality District issued the United States a permit to construct eight natural gas radiant heaters at the facility. The permit limited the volume of natural gas that the eight heaters could consume during the first quarter of each calendar year to 2.47 x 106 cubic feet. On January 30, 1996, the Sacramento Air Quality District issued the United States a second permit to operate the heaters at the facility. The second permit included the same limit on natural gas usage.
 
 
 6
 During the first quarter of the 1996 calendar year, the eight heaters exceeded the natural gas usage limit established by the permits and released an excess amount of nitrogen oxides into the air. Following readings of the gas meters at the facility on February 1, 1996 and on May 8, 1996, the United States immediately discontinued its use of the eight heaters and submitted to the Sacramento Air Quality District an application to increase the maximum volume of natural gas that the heaters could consume. On October 25, 1996, the Sacramento Air Quality District issued a notice of violation of the original permit conditions for the first quarter of the 1996 calendar year and, thereafter, issued a new permit which tripled the natural gas usage limit.
 
 
 7
 The Sacramento Air Quality District subsequently commenced the present action against the United States in state court pursuant to the California Health and Safety Code to recover $13,050 in civil penalties for the permit violations and to enjoin the facility from further violating the state's air quality requirements. The United States removed this action to the district court pursuant to the federal removal statute[1]. See 28 U.S.C. S 1442(a)(1); Nebraska ex rel. Dep't of Social Servs. v. Bentson, 146 F.3d 676, 678(9th Cir. 1998) (holding that the federal removal statute allows a covered person to remove an action to district court based on the defense of sovereign immunity). The parties thereafter stipulated to the facts of the case, agreed to the dismissal of the Sacramento Air Quality District's claim for injunctive relief, and filed cross motions for summary judgment.[2] The only issue that remained before the district court was whether the United States had waived its sovereign immunity from liability for civil penalties imposed by a state to punish past violations of state and local air quality laws. Relying on the Supreme Court's decision in U.S. Dep't of Energy v. Ohio, 503 U.S. 607 (1992), the district court held that the Clean Air Act does not provide for such a waiver. It then entered a final judgment in favor of the United States and ordered the file closed.
 
 II
 
 8
 We must resolve an important question that concerns the scope of our jurisdiction to hear this appeal pursuant to 28 U.S.C. S 1291. An appellate court is under a "special obligation to satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review, even though the parties are prepared to concede it. . . . [or ] make no contention concerning it." Axess Int'l, Ltd. v. Intercargo Ins. Co., 183 F.3d 935, 943 (9th Cir. 1999) (quoting Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541 (1986)) (internal quotations omitted). If the district court lacked jurisdiction, we have jurisdiction on appeal to correct the jurisdictional error, but not to entertain the merits of the dispute. See id.
 
 
 9
 The Sacramento Air Quality District did not challenge the removal of this action from state court; nor did it question the propriety of the district court's subject matter jurisdiction under the removal statute. See Florida v. Cohen , 887 F.2d 1451, 1454 (11th Cir. 1989) (holding that the federal removal statute provides an independent basis for federal jurisdiction irrespective of whether the district court has original jurisdiction). In reviewing the merits of this appeal, however, it came to our attention that certain language in the Clean Air Act directly conflicts with the right of the federal government to remove actions from state and local courts pursuant to the federal removal statute. Section 7604(e), which was added to the Clean Air Act by amendment in 1977, plainly protects the right of state and local governments to obtain remedies or sanctions against the federal government in nonfederal fora pursuant to state and local laws respecting the control and abatement of air pollution.[3] See 42 U.S.C. S 7604(e). Thus, while the federal removal statute generally allows the federal government to litigate disputes in federal court, the Clean Air Act specifically protects the right of state and local governments to obtain remedies or sanctions against the federal government in a nonfederal forum pursuant to state and local air quality laws. Because it appeared to us that it would beimpossible to obtain a remedy or a sanction in state court if an action is removed to federal court, we ordered the parties to submit supplemental letter memoranda discussing whether (1) the present action was improperly removed from the state court pursuant to the federal removal statute, and (2) whether the district court had subject matter jurisdiction on any other ground. See 14B Charles Alan Wright et al., Federal Practice & Procedure S 3721 (3d ed. 1998) (stating that "defects going to the removal court's subject matter jurisdiction are not waivable and may by raised at any time after the removal"); see, e.g., Luehrs v. Utah Home Fire Ins. Co., 450 F.2d 452, 454 (9th Cir. 1971) (raising sua sponte the jurisdictional issue of whether removal was properly based on diversity jurisdiction where the complaint failed to allege diversity of citizenship). We discuss each issue, below, under a separate heading.
 
 
 10
 * We are persuaded that this action was improperly removed from the state court pursuant to the federal removal statute. Congress enacted the Clean Air Act in 1963 to protect and enhance the quality of the nation's air resources and to promote the health, welfare, and productive capacity of its population. See 42 U.S.C. S 7401. The original version of the act required federal facilities to cooperate with state and local air pollution agencies only when practicable and only to the extent that cooperation was in the national interest. See Clean Air Act of 1963, Pub. L. No. 88-206, S 7. When it became apparent, however, that federal compliance with air quality laws was laggard, Congress departed from its former policy of voluntary compliance and amended the Clean Air Act to impose an affirmative duty upon federal facilities to comply with all federal, state, interstate, and local requirements respecting the control and abatement of air pollution to the same extent as any other person. See Clean Air Amendments of 1970, Pub. L. No. 91-604, S 5 (1970); H.R. Rep. No. 294, 95th Cong., 1st Sess. (1977), reprinted in 1977 U.S. Code. Cong. & Admin. News 1077, 1277-78.
 
 
 11
 In 1976, the federal government tested the scope of its new obligation to comply with laws governing the control and abatement of air pollution in Hancock v. Train , 426 U.S. 167 (1976), when it challenged the ability of state and local governments to enforce their air quality laws. Id. at 172-75. In that case, a state brought an action in federal court seeking a declaration that the federal government was subject to state enforcement of certain permit requirements which the state had established as the procedure for enforcing its substantive air quality standards. See id. at 176. The Supreme Court held that, though the Clean Air Act imposed an affirmative duty on the federal government to comply with all substantive air quality requirements, Congress did not intend to subject federal facilities to state procedures used to enforce those requirements. See id. at 184, 196, 198-99. In distinguishing substantive requirements from procedural requirements, the Court reasoned that "Congress [had] fashioned a compromise which, while requiring federal installations to abate their pollution to the same extent as any other air contaminant source and under standards which [states] have prescribed, stopped short of subjecting federal installations to state control." Id. at 198-99.
 
 
 12
 Congress nullified the Supreme Court's decision in Hancock through a legislative amendment to the Clean Air Act in 1977. It also took several additional measures to end the federal government's ability to delay, excuse, or evade compliance with state and local air quality laws. See H.R. Rep. No. 294 95th Cong., 1st Sess. (1977), reprinted in 1977 U.S. Code. Cong. & Admin. News 1077, 1079, 1279-80; H.C. Rep. No. 564, 95th Cong., 1st Sess. (1977), reprinted in 1977 U.S. Code. Cong.& Admin. News 1502, 1518. In particular, Congress expressly amended the Clean Air Act to subject federal facilities to procedural and substantive requirements respecting the control and abatement of air pollution. See Clean Air Act Amendments of 1977, Pub. L. No. 95-95, S 116(a) (codified at 42 U.S.C. S 7418). It also added language to the act to ensure that nothing in the laws of the United States shall "prohibit, exclude, or restrict" any state or local government from "bringing any enforcement action or obtaining any judicial remedy or sanction [against the federal government] in any [s]tate or local court" or from doing the same "in any [s]tate or local administrative agency, department or instrumentality." 42 U.S.C. S 7604(e)).
 
 
 13
 While the 1977 amendments to the Clean Air Act do not expressly prevent the federal government from removing actions from state and local courts, their plain text unequivocally demonstrates that Congress intended to prevent the removal of a covered action to federal court. By guaranteeing the right of state and local governments to obtain judicial remedies and sanctions in state and local courts, the text of the amendments necessarily prohibits the removal of actions that are brought by state and local governments pursuant to their own air quality laws.[4] See 42 U.S.C. S 7604(e). For, it is impossible to obtain judicial remedies and sanctions in state and local courts once an action is removed to federal court. The removal of an action to federal court necessarily divests state and local courts of their jurisdiction over a particular dispute. See 28 U.S.C. S 1446(d) (stating that, following the filing of a notice of removal, the state court "shall proceed no further unless and until the case is remanded"); Resolution Trust Corp. v. Bayside Developers, 43 F.3d 1230, 1238 (9th Cir. 1994) (holding that "the clear language of the general removal statute provides that the state court loses jurisdiction upon the filing of the petition for removal"); 14C Charles Alan Wright et al., Federal Practice & Procedure S 3737 (3d ed. 1998) (stating that, following removal, any further proceedings in a state court are considered coram non judice and will be vacated even if the case is later remanded). Because state and local courts cannot fashion remedies or impose sanctions in the absence of jurisdiction, the 1977 amendments to the Clean Air Act must be read to prohibit the removal of actions brought by state and local governments pursuant to state and local laws relating to the control and abatement of air pollution. See 42 U.S.C. S 7604(e).
 
 
 14
 The legislative history of the Clean Air Act further supports our conclusion that Congress intended to prohibit the removal of actions that are brought against the federal government in state and local courts pursuant to state and local air quality laws. That history is evidenced by Congress's manifest frustration with the federal government's laggard and obstinate approach towards complying with state and local air quality laws. See H.R. Rep. No. 294, 95th Cong., 1st Sess. (1977), reprinted in 1977 U.S. Code Cong. & Admin. News 1077, 1277-78[5]. Though the final version ofthe 1977 amendments deleted, without explanation, language that would have expressly precluded removal, the history of the Clean Air Act makes it clear that Congress nevertheless intended to establish a "detour around a federal forum" when state and local governments bring covered actions against federal facilities. United States v. Puerto Rico, 721 F.2d 832, 838, 839 n.8 (1st Cir. 1983) (dicta); see also H.C. Rep. No. 95-564, 95th Cong., 1st Sess. (1977), reprinted in 1977 U.S. Code. Cong. & Admin. News 1502, 1518. Indeed, in passing the 1977 amendments, "Congress apparently acted upon the belief that state court adjudication of state law issues was of paramount importance in air pollution control matters." Puerto Rico, 721 F.2d at 839. It therefore included sweeping language that guarantees the right of state and local governments not only to commence an enforcement action against the federal government in a nonfederal forum, but also to obtain remedies and sanctions there. See 42 U.S.C. S 7604(e). And, unlike the text of the amendments to the Clean Water Act which Congress enacted the same year, the 1977 amendments to the Clean Air Act do not expressly preserve the federal government's right to remove an action covered by the Clean Air Act to federal court.[6] See H.R. Cong. Rep. No. 95-830, 95th Cong. 1st Sess., reprinted in, 1977 U.S. Code Cong. & Admin. News 4424, 4468 (stating that the relevant text of the Clean Water Act is "essentially the same" as that of the Clean Air Act "with the additional requirement that any action or other judicial proceeding to which this provision applies may be removed"); compare 33 U.S.C. S 1323(a) with 42 U.S.C. SS 7418(a), 7604(e). When viewed together, those facts indicate that Congress consciously foreclosed the removal of actions brought against federal facilities by state and local governments pursuant to state and local air quality laws. See Puerto Rico, 721 F.2d at 839. They also explain that the inclusion of language in the Clean Air Act expressly precluding the removal of actions against the federal government would have been, at bottom, redundant.
 
 
 15
 Of course, it is a well established axiom of statutory construction that, whenever possible, a court should interpret two seemingly inconsistent statutes to avoid a potential conflict. See Kremer v. Chemical Constr. Corp., 456 U.S. 461, 468 (1982). "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent aclearly expressed congressional intention to the contrary, to regard each as effective." Morton v. Mancari , 417 U.S. 535, 551 (1974). Despite the apparent conflict between the text of the federal removal statute, which generally authorizes removal, and the text of the Clean Air Act, which implicitly prohibits the removal of actions seeking a judicial remedy or a sanction against a federal facility for a violation of state and local air quality laws, we are persuaded that it is possible to give these statutes full effect.
 
 
 16
 It is fundamental that a general statutory provision may not be used to nullify or to trump a specific provision, irrespective of the priority of enactment. See Green v. Bock Laundry Mach. Co., 490 U.S. 504, 524 (1989) (stating that a general statutory rule does not govern unless there is no more specific rule); Radzanower v. Touche Ross & Co. , 426 U.S. 148, 153 (1976) (holding that the general venue provision of the Securities Exchange Act of 1934 does not trump the specific venue provision of the National Bank Act); Rucker v. Davis, 203 F.3d 627, 643 (9th Cir. 2000) (holding that a statute requiring the terms of a lease to be reasonable does not override a statute authorizing the eviction of innocent tenants whose guests secretly possess illegal drugs). "The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all." Radzanower, 426 U.S. at 153 (quotations omitted). In the present case, we are persuaded that we may give full effect to both the federal removal statute and the Clean Air Act by concluding that, though Congress intended to confer upon the federal government a general right of removal, it did not intend for the right to apply to actions brought by state and local governments pursuant to their own air quality laws[7].
 
 
 17
 In enacting the federal removal statute, Congress intended to establish a general rule allowing the federal government to defend itself in federal courts when complex federal issues are involved. See S. Rep. 104-366, 104th Cong., 2d Sess. (1996), reprinted in 1996 U.S. Code Cong. & Admin. News 4202, 4210-11. In preventing the removal of actions brought against the federal government pursuant to state and local air quality laws, in contrast, Congress acted upon the specific belief that the adjudication of actions arising under state and local air quality laws in state and local courts is of paramount importance to the control and abatement of air pollution. See Puerto Rico, 721 F.2d at 838. Forcing the federal government to adjudicate actions involving state and local air quality laws in state and local courts serves the specific purpose that motivated the adoption of the amendments to the Clean Air Act, without unduly interfering with the general operation of the federal removal statute. The vast majority of cases involving the federal government are unaffected by the Clean Air Act and may be removed to federal court pursuant to the federal removal statute[8]. For thosecases that fall under the exception to removal, the federal government may still seek federal review from the Supreme Court, and it may also litigate complex federal issues in federal court by commencing a concurrent federal action under the Declaratory Judgment Act. See 28 U.S.C. S 1257 (allowing review by the Supreme Court of the final judgment of the highest court of a state); 28 U.S.C. S 2201 (authorizing federal courts to grant declaratory relief); see, e.g., United States v. Tennessee Air Pollution Control Bd., 185 F.3d 529 (6th Cir. 1999) (involving a concurrent action brought by the federal government under the Declaratory Judgment Act while a separate action for violations of state and local air quality laws was pending in a state forum). Accordingly, we hold that the federal removal statute is inapplicable to actions filed by state and local governments in nonfederal fora pursuant to state and local air quality laws, and that this case was improperly removed from the state court.
 
 B
 
 18
 Our conclusion that this case was improperly removed from the state court does not end the inquiry into the scope of our appellate jurisdiction. The Supreme Court has instructed that the existence of subject matter jurisdiction at the time of a final judgment cures any defect in the removal of a case from state court which was not raised before the district court. See Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 702 (1972). Thus, "where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case." Id. In light of our conclusion that the federal removal statute is inapplicable to this case, we may entertain the merits of this appeal only if the district court had federal question jurisdiction.[9] See Audette v. International Longshoremen's & Warehousemen's Union, 195 F.3d 1107, 1111 (9th Cir. 1999) (stating that federal question jurisdiction is required in the absence of diversity jurisdiction).
 
 
 19
 Our review of the Sacramento Air Quality District's complaint, however, indicates that this case does not present a federal question for the purposes of establishing federal jurisdiction. "The presence or absence of federal question jurisdiction is governed by the `well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Audette, 195 F.3d at 1111 (quotations omitted). Under that rule, we must look to "what necessarily appears in the plaintiff's statement of his[or her] own claim in the bill or declaration, unaided by anything alleged in anticipation of avoidance of defenses which it is thought the defendant may interpose."Oklahoma Tax Comm'n v. Graham, 489 U.S. 838, 841 (1989); see also Berger Levee Dist. v. United States, 128 F.3d 679, 681 (8th Cir. 1997) (stating that the government's actual or probable assertion of the Supremacy Clause is insufficient to confer federal jurisdiction); Tingey v. Pixley-Richards West, Inc., 953 F.2d 1124, 1129-30 (9th Cir. 1992) (holding that the anticipation of the defense of federal preemption in a complaint does not confer a right of removal).
 
 
 20
 The claims alleged in the Sacramento Air Quality District's complaint are based entirely on state and local laws concerning the control and abatement of air pollution. See Cal. Health & Safety Code SS 42402-42403. While those laws play a pivotal role in furthering the goals of the Clean Air Act, they do not, standing alone, give rise to federal causes of action. See U.S. Dep't of Energy v. Ohio, 503 U.S. 607, 62427 (1992) (stating that actions brought against the federal government pursuant to state water quality laws, though authorized by the Clean Water Act, do not "arise under federal law" so as to confer federal question jurisdiction). In fact, the only reference to federal law in the Sacramento Air Quality District's complaint relates to the United States' probable assertion of the defense of sovereign immunity. See Wisconsin Dep't of Corrections v. Schacht, 524 U.S. 381, 382 (1998) (stating that the Eleventh Amendment grants states "a legal power to assert a sovereign immunity defense" and that "a court may ignore the defect unless it is raised" by the state). Under the well pleaded complaint rule, it is of no consequence to our jurisdictional determination. Berger Levee Dist., 128 F.3d at 681. We therefore agree with the Sacramento Air Quality District that the district court lacked subject matter jurisdiction over this action.
 
 III
 
 21
 We hold that the present action was improperly removed from state court pursuant to the federal removal statute. We vacate the judgment of the district court with directions to remand this matter to the state court, because we conclude that the district court lacked subject matter jurisdiction. Counsel for both the Sacramento Air Quality District and the United States are commended for their excellent briefing and discussion of the jurisdictional issues during oral argument.
 
 
 22
 VACATED and REMANDED.
 
 
 
 Notes:
 
 
 [1]
 The federal removal statute states, in relevant part:
 A civil action or criminal prosecution commenced in a State court against any of the following may be removed by them to the dis trict court of the United States for the district and division embracing the place wherein it is pending:
 (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.
 28 U.S.C. S 1442(a)(1) (emphasis added).
 
 
 [2]
 The Sacramento Air Quality District's claim for injunctive relief was dismissed on July 22, 1998 in the district court's pretrial status order. It has no effect on the finality of the district court's order granting summary judgment on the state law claim for civil penalties.
 
 
 [3]
 The Clean Air Act states, in relevant part:
 Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from--
 (1) bringing any enforcement action or obtaining any judi cial remedy or sanction in any State or local court , or
 (2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality, against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution.
 42 U.S.C. S 7604(e) (emphasis added).
 
 
 [4]
 We disagree with the United States' contention that 42 U.S.C. S 7604(e) is merely a grant of concurrent jurisdiction or a simple savings clause. The second sentence of the subsection, unlike the first sentence, does more than just preserve the right of state and local governments to bring actions and to obtain judicial remedies and sanctions pursuant to state and local air quality laws. It expands those rights by making inapplicable "any other law of the United States" that would have a contrary effect. See 42 U.S.C. S 7604(e).
 
 
 [5]
 The committee report explains:
 The pattern of resistance to meet State and local procedural and substantive requirements may have receded somewhat since 1970, but many Federal agencies continue to try to evade the mandate of Federal law to comply with all State and local requirements. Instead of playing the leadership role envisioned by Public Law 91-604, many Federal agencies and facilities have been laggard or have obstinately refused to obtain required permits, to submit required reports, to conduct required monitoring, to permit on-site inspections, and even to meet compliance schedules and emission limits.
 The Secretary of the Army has expressly ordered the Volunteer Army Ammunition Plant in Chattanooga, Tenn., not to apply for required local emission control permits. The Tennessee Valley Authority has been given notice of noncompliance by the Environmental Protection Agency for substantive violations of emis sion limitations or schedules of compliance in Alabama, Kentucky, and Tennessee. Evidence of failure to meet compliance schedules in the District of Columbia has been presented with respect to the General Services Administration heating plant, the Naval Research Laboratory, the Anacostia Annex and Naval Station and the U.S. Capitol Powerplant. Local air pollution law was violated by employees of a U.S.-owned railroad in Alaska.
 (citations omitted).
 
 
 [6]
 The Clean Water Act states, in relevant part:
 Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government, or any officer, agent, or employee thereof in the performance of his official duties, from removing to the appropriate Federal district court any proceeding to which the department, agency, or instrumentality or officer, agent, or employee thereof is subject pursuant to this section, and any such proceeding may be removed in accordance with section 1441 et seq. of Title 28.
 Clean Water Act of 1977, Pub. L. No. 95-217, SS 60, 61 (codified at 33 U.S.C. S 1323(a)).
 
 
 [7]
 We find unpersuasive the United States' suggestion that the Clean Air Act and the federal removal statute should be read together "to allow states to bring enforcement actions in state courts and to allow the United States to remove those actions." Such a reading would improperly "prohibit, exclude, or restrict" state and local governments from "obtaining any judicial remedy or sanction in a [state] or local court." 42 U.S.C. S 7604(e).
 
 
 [8]
 In fact, our research indicates that only one other statute, the Safe Drinking Water Act, includes language that is similar to that used in S 7604(e). The Safe Drinking Water Act states, in relevant part:
 Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State or local government from--
 (1) bringing any action or obtaining any remedy or sanction in any State or local court, or
 (2) bringing any administrative action or obtaining any administrative remedy or sanction, against any agency of the United States under State or local law to enforce any requirement respecting the provision of safe drinking water or respecting any underground injection control program.
 42 U.S.C. S 300j-8(e).
 
 
 [9]
 The parties concur that the only other pertinent bases for jurisdiction, 28 U.S.C. S 1346(a) and 42 U.S.C. S 7604(a), are inapplicable to the present case. We agree. See 28 U.S.C. S 1346(a) (conferring original jurisdiction over certain state law causes of action against the United States where the amount sought does not exceed $10,000); 42 U.S.C. S 7604(a) (conferring original jurisdiction over citizen suits under the Clean Air Act when certain notice requirements are satisfied).