**CITY OF JACKSONVILLE, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF THE NAVY, Defendant.**

**No. 3:01–CV–368–J–20HTS.**

United States District Court,
M.D. Florida,
Jacksonville Division.

Feb. 5, 2002.

Tracey I. Arpen, Jr., Jason R. Teal, General Counsel's Office, City of Jacksonville, Jacksonville, FL, for City of Jacksonville, plaintiff.

Ronnie S. Carter, U.S. Attorney's Office, Middle District of Florida, Jacksonville, FL, Kathryn E. Kovacs, U.S. Department of Justice, Environment & Natural Resources Division, Appellate Section, Washington, DC, Pamela S. Tonglao, U.S. Dept. of Justice, Environment & Natural Resources Division, Washington, DC, Robert Smith, Office of the General Counsel, Navy Litigation Office, Washington Navy Yard, DC, for Department of the Navy, defendant.

## *ORDER*

SCHLESINGER, District Judge.

This cause is before the Court on: Plaintiff's Motion to Remand and for Attorney's Fees, Costs and Expenses (Doc. No. 6, filed May 3, 2001) and Defendant's Memorandum of Law in Opposition (Doc. No. 10, filed May 23, 2001); and Defendant's Motion for Judgment on the Pleadings and Request for Oral Argument[1] (Doc. No. 16, filed July 31, 2001) and Plaintiff's Opposition (Doc. No. 20, filed September 7, 2001). For the reasons stated herein, both Motions are **DENIED**.

## I. Factual Background and Procedural History

This action was originally brought in state court on behalf of the City of Jacksonville ("Plaintiff") against the United States Department of the Navy ("Defendant") for alleged violations of a pollution control permit issued under the Florida Air and Water Pollution Control Act, Chapter 403 Part I, Florida Statutes, and violations of other local air pollution control laws enacted pursuant to the Federal Clean Air Act, 42 U.S.C. § 7401–7671(q) ("CAA").[2]

---

1. The request for oral argument is moot. The Court heard oral argument on both the Motion to Remand and the Motion for Judgment on the Pleadings. The attorneys for both sides are commended for their excellent work both during oral argument and on the written briefs.

2. The Clean Air Act vests the states with the primary responsibility for assuring air quality within their geographic area, including the authority to specify the manner in which air quality standards will be achieved and main-

Plaintiff alleges in this action that in December 1997, it issued a Cease and Desist Citation notifying Defendant of its violation of sulfur emission standards ("sulfur violations"), and directed the Defendant to take the following steps: 1) cease exceeding local pollution control standards; 2) respond in writing to the citation; 3) remove or abate the cause of the pollution; and 4) contact the City's Regulatory and Environmental Services Department ("RESD") to resolve the citation. In October 1998, Defendant advised RESD that it could not enter into any settlement agreement, including payment of civil penalties. Subsequently, in April 1998, Defendant was forced to admit that it had again violated local pollution control standards, notifying RESD that the Jacksonville Naval Air Station had, on eleven separate occasions, failed to comply with local requirements governing vapor pressure and other solvents ("vapor violations").

Although the Defendant has apparently abated its allegedly unlawful pollution with respect to both the sulfur and vapor violations, Plaintiff seeks remedial civil penalties of up to $10,000 per occurrence. On April 3, 2001, Defendant removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1). Defendant thereafter sought to remand the case to state Court, arguing that the express language of the CAA precludes removal to federal court. While the Motion to Remand was pending, Defendant filed a Motion for Judgment on the Pleadings. In its Motion, Defendant asserted that, as an arm of the federal government, it was entitled to sovereign immunity with respect to all claims for remedial civil penalties under the CAA. Following oral argument on the Motion for Judgment on the Pleadings, the Court requested that the parties submit briefs addressing the issue of whether the Department of the Navy waived federal sov-

ereign immunity irrespective of whether the CAA itself waived immunity by applying for an air pollution permit through the state of Florida. Having had the benefit of the parties' briefs, the Court now concludes that Defendant did not waive sovereign immunity solely by virtue of applying for a permit. Accordingly, any waiver must be found in the text of the CAA itself. Of course, if this case was improvidently removed, then the Court is required to remand the case to state court without adjudicating the merits. *See Sacramento Metro. Air Quality Management Dist. v. United States,* 215 F.3d 1005 (9th Cir.2000). Accordingly, the removal issue must be addressed before turning to the substantive question of sovereign immunity.

**II. Motion to Remand**

■ In 1996, Congress amended the federal removal statute to allow the United States or any of its agencies to remove to federal court any civil action brought against it in state court. *See* 28 U.S.C. § 1442(a)(1). The amendment effectively overruled an earlier Supreme Court decision holding that only federal officers, as opposed to agencies, could remove to federal court under the statute. *See International Primate Protection League v. Administrators of Tulane Educ. Fund,* 500 U.S. 72, 79, 111 S.Ct. 1700, 114 L.Ed.2d 134 (1991). Notwithstanding this unequivocal grant of removal jurisdiction, Plaintiff argues that a set of 1977 statutory amendments to the CAA-penned some nineteen years prior to the amendment to the removal statute implicitly prohibits removal of actions seeking civil sanctions against a federal facility for violation of state and local air quality laws. Plaintiff's argument derives from a highly literal reading of the text of the CAA and a recent decision by

tained throughout the state. 42 U.S.C. § 7406.

the Ninth Circuit in *Sacramento Metro. Air Quality Management Dist. v. United States*, 215 F.3d 1005 (9th Cir.2000) ("*Sacramento* ").

The 1977 Amendments to the CAA did not expressly address the United States' right to remove pollution control actions. They do, however, contain what appears to be an unrestricted right of persons (including state agencies) to bring suit in state court. The "citizen suit" provision of the CAA so named because it authorizes private parties as well as governmental authorities to sue to enforce pollution control laws contains the following relevant language:

> Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from-
>
> (1) bringing any enforcement action or *obtaining* any judicial remedy or sanction in any State or local court, or
>
> (2) bringing any administrative enforcement action or *obtaining* any administrative remedy or sanction in any State or local administrative agency, department or instrumentality.

42 U.S.C. § 7604(e) (emphasis added).

In *Sacramento, supra*, the Ninth Circuit seized on Congress' use of the verb "obtain" to conclude that in authorizing plaintiffs to *obtain* sanctions against the federal government, the CAA necessarily prohibited removal. In vacating the district court's entry of summary judgment for the United States and ordering that the case be remanded to state court, the Court of Appeals rejected the government's argument that the CAA granted concurrent jurisdiction to state and federal courts. The court reasoned that had Congress intended to establish concurrent jurisdiction, the Amendments would have simply authorized the "bringing" of an action in state court, rather than the "bringing" of an

action and the "obtaining" of relief. *Id.* at 1012. The court additionally noted that the phrase "any other law," as used in the citizen suit provision, barred concurrent jurisdiction because "any other law" included the removal statute, and Congress had specified that the right to obtain relief in state court was not to be restricted by operation of any other law. *Id.*

While *Sacramento* may be applicable to this case, this Court rejects it as an overly literal reading of the CAA and contrary to the letter and spirit of the removal statute. As noted above, the 1977 Amendments to the CAA predated the amendments to the removal statute by some nineteen years. Thus, the Court questions whether the phrase "any other law" as used in the CAA can properly be applied to 28 U.S.C. § 1442(a), which was amended in 1996 for the specific purpose of allowing federal agencies and officials to have the validity of their federal defenses determined in federal court. *See Jefferson County v. Acker*, 137 F.3d 1314 (11th Cir.1998).

The core substantive issue in this case is whether Defendant is entitled to a defense of sovereign immunity from civil penalties for local pollution infractions. This is undoubtedly a "federal" defense, and a prime example of the type of defense that Congress intended to be litigated in a federal forum. *See* H.R.Rep. No. 104–798, 104th Cong., 2d Sess., 1996, 1996 WL 532692 (specifically citing sovereign immunity as an example of a question concerning exercise of federal authority, which Congress intended to be adjudicated in federal court). Given that the CAA does not expressly prohibit removal, this Court believes that the Ninth Circuit contravened congressional intent by reading such a prohibition into the statute.

The Court recognizes that in the Clean Water Act ("CWA"), which was amended the same year as the CAA, Congress expressly authorized removal of actions

against the federal government. *See* 33 U.S.C. § 1322(a) ("Nothing in this section shall be construed to prevent any department, agency, or instrumentality of the Federal Government . . . from removing to the appropriate Federal district court . . . ."). The omission of this passage from the CAA, whose language closely mirrors the CWA in most other respects, is troubling, however the discrepancy is not in and of itself adequate grounds to ignore Congress' clearly expressed intent in the removal statute. Moreover, as far as this Court is aware, not a single judicial decision besides *Sacramento* has interpreted the CAA as prohibiting removal. Though the issue remains unsettled, this Court can find no affirmative prohibition in the CAA against removal to federal court and therefore concludes that a remand to state court is unwarranted in this case.

### III. Motion for Judgment on the Pleadings

Having concluded that this case was properly removed, the Court next turns to the issue of whether the CAA waives federal sovereign immunity with respect to punitive sanctions for clean air violations.[3]

#### A. *Standard of Review*

■ Though styled as a Rule 12(c) Motion, Defendant's claim of sovereign immunity raises a "facial attack" on this Court's subject matter jurisdiction to hear this case. *See Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). Under these circumstances, the standard of review is similar to that for a motion brought under Rule 12(b)(1): the Court merely examines whether "the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Id.*

#### B. *Sovereign Immunity*

[3, 4] It is established law that any waiver of the federal government's sovereign immunity must be unequivocal. *United States Dep't of Energy v. Ohio*, 503 U.S. 607, 615, 112 S.Ct. 1627, 118 L.Ed.2d 255 (1992) ("*DOE*") (citing *United States v. Mitchell*, 445 U.S. 535, 538–39, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980)). Thus, a waiver will only be found in cases where Congress clearly expressed its intent to subject the federal government to civil suit. *See id.*

As noted above, the CAA explicitly states that no law of the United States shall be construed to prohibit, exclude, or restrict a state from bringing an enforcement action or obtaining any judicial remedy or sanction against the United States, or from bringing an administrative enforcement action against the federal government and obtaining an administrative remedy or sanction. 42 U.S.C. § 7604(e). In *United States v. Tennessee Air Pollution Control Board*, 185 F.3d 529 (6th Cir. 1999) ("*Tennessee*"), which involved the identical issue of sovereign immunity as presented in this case, the Sixth Circuit concluded that the words "any other law" as used in the Citizen Suit provision of the CAA included the law of sovereign immunity, so that the United States was not immune from civil penalties for violations of air pollution control laws.[4] *Id.* at 532.

---

**3.** There is no dispute that the CAA waives sovereign immunity from forward looking coercive sanctions, which in any event are not at issue in this case.

**4.** Interestingly, the Sixth Circuit relied on the phrase "any other law" to find a waiver of sovereign immunity in much the same way

that the Ninth Circuit did to find a prohibition against removal to federal court. As explained more fully herein, however, the Sixth Circuit went on to place that language within the greater context of the CAA, including language in the CAA's "federal facilities" section that demonstrated a waiver of sovereign immunity from civil penalties.

The *Tennessee* Court distinguished *DOE, supra,* where the Supreme Court had reversed the Sixth Circuit and held that the CWA did not waive sovereign immunity from civil sanctions.[5] In *DOE,* the Supreme Court examined the "federal facilities" section of the CWA, which appeared to waive federal government sovereign immunity from civil sanctions. The relevant section of the CWA states that:

"(a) Each department agency or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer agent, or employee thereof in the performance of his official duties, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution in the same manner, and to the same extent as any nongovernmental entity including the payment of reasonable service charges. The preceding, sentence shall apply . . . to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner . . . . *[T]he United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court . . . .*"

33 U.S.C. § 1323 (emphasis added).

In *DOE,* the Court interpreted the phrase "process or sanctions" as used in the CWA's federal facilities section to mean *coercive* fines only, as distinguished from backwards-looking punitive sanctions. *DOE,* 503 U.S. at 621–27, 112 S.Ct. 1627. The Court based its interpretation on three factors. First, it held that the meaning of "sanction" is spacious enough to cover both punitive and coercive fines. Second, the word "sanctions" was coupled with "process," which the Court viewed as connoting forward-looking enforcement. Finally, the Court noted that the statute referred to "process and sanctions" being "enforced" in courts or otherwise. *Id.* at 623, 112 S.Ct. 1627. In the Court's view, enforcement of "process" is traditionally accomplished through forward looking orders enjoining future violations, as opposed to "requirements," which the Court said are enforced through backwards-looking penalties for past violations. *Id.*

In *Tennessee,* the United States argued that similarities between the CWA and CAA required the court to conclude that the federal government had not waived its sovereign immunity under the latter. The court disagreed, finding that unlike the CWA, the CAA's citizen suit provision clearly manifested an intent to allow states to pursue civil sanctions from the federal government. *Tennessee,* 185 F.3d at 532. As noted above, the citizen suit provision of the CAA expressly states that states may bring any enforcement action to obtain "any judicial remedy or sanction" for clean air violations, and that "no other law" shall interfere with that right. When read literally, the phrase "no other law" would appear to encompass the law of sovereign immunity.[6] *Id.* There is no par-

---

**5.** *DOE* also addressed the issue of sovereign immunity under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6901, *et seq.,* holding that there was no waiver of sovereign immunity from punitive fines under that Act.

**6.** The Court sees no inconsistency in its reliance on the literal language of the CAA here while rejecting Plaintiff's "literal" interpretation of the citizen suit provision insofar as it applies to the remand issue. Unlike the questionable prohibition on removal, which finds no other support in the text of the CAA, both the statute as a whole and a number of separate statutory provisions demonstrate a clear congressional intent to waive federal sover-

allel language in the CWA's citizen suit provision. Moreover, the CAA expressly permits a person to obtain any *administrative* remedy or sanction in any State or local *administrative agency*. Because administrative agencies are seldom empowered to issue coercive penalties, such language would be futile had Congress in fact intended to prohibit punitive sanctions against the government. *See Tennessee,* 185 F.3d at 532.

Finally, the Sixth Circuit noted a subtle yet meaningful distinction between the federal facilities sections of the CWA and CAA. Specifically, the CWA states that "the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court." 33 U.S.C. § 1323(a). In contrast, the CAA contains no such express limitations on the liability of the United States for civil penalties. *Id.* at 534.

Despite the absence of this limiting language in the CAA, the CAA's federal facilities section still pairs "process" with "sanction" in terms of setting forth the federal government's obligations to adhere to local air pollution control laws, and is therefore arguably susceptible to the same interpretation of "sanction" ascribed by the Supreme Court to the CWA.[7] The Sixth Circuit acknowledged this in *Tennessee,* but held that the federal facilities of the two statutes must not be read in isolation. Thus, reading the CAA's federal facilities section in conjunction with its citizen suit provision, which expressly authorizes

states to seek *any* sanction against the federal government, the court was able to find an unequivocal waiver of sovereign immunity with respect to punitive, as well as civil, penalties. *Tennessee,* 185 F.3d at 534.

This Court is satisfied that the Sixth Circuit's reading of the CAA is correct. Even though the Supreme Court ultimately concluded in *DOE* that sovereign immunity from punitive sanctions had not been clearly waived, that conclusion rested on the Court's inability to find an unequivocal waiver in the statute. *DOE,* 503 U.S. at 626–27, 112 S.Ct. 1627. Rather than finding that the CWA did *not* intend to waive federal government sovereign immunity from civil penalties, the Court was simply compelled to conclude that "[t]he question has no satisfactory answer." *Id.* at 627, 112 S.Ct. 1627. As demonstrated in *Tennessee,* however, the CAA is far less ambiguous regarding federal sovereign immunity than the CWA. Accordingly, the Court finds that the CAA waives the federal government's sovereign immunity from backwards-looking civil penalties and Plaintiff may properly proceed with this action.

## IV. Conclusion

The Court finds that nothing in the CAA prohibited the Defendant from removing this action to federal court, and the case was otherwise properly removed. Moreover, this Court holds that the CAA unequivocally waives the federal govern-

---

eign immunity from civil penalties. *See* text *infra.*

7. The CAA's federal facilities sections states in relevant part that:

Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or

which may result, in the discharge of air pollutants, and each officer, agent, or employee thereof, shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity.

42 U.S.C. § 7418(a).

ment's sovereign immunity from civil penalties for air pollution control violations. Therefore, it is **ORDERED** that:

1) Plaintiff's Motion to Remand and for Attorney's Fees, Costs and Expenses (Doc. No. 6, filed May 3, 2001) is **DENIED**; and

2) Defendant's Motion for Judgment on the Pleadings (Doc. No. 16, 2001) is **DENIED**.