[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**October 28, 2003**
**THOMAS K. KAHN**
**CLERK**

_____

No. 03-10570

_____

D. C. Docket No. 01-00368-CV-J-20-HTS

CITY OF JACKSONVILLE, a political subdivision
of the State of Florida,

Plaintiff-Appellee,

versus

DEPARTMENT OF THE NAVY,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(October 28, 2003)**

Before BLACK and FAY, Circuit Judges, and JORDAN[*], District Judge.

FAY, Circuit Judge:

_____

[*]Honorable Adalberto J. Jordan, United States District Judge for the Southern District of Florida, sitting by designation.

The City of Jacksonville ("City") originally brought this action in a Florida state court against the United States Department of the Navy ("Navy") alleging past violations of state and local air pollution control laws enacted pursuant to the Federal Clean Air Act, 42 U.S.C. §§ 7401-7671(q) ("CAA") and seeking punitive penalties for these past offenses. The Navy removed the case to federal district court pursuant to 28 U.S.C. § 1442(a)(1), and the district court denied the City's motion to remand. The Navy made a motion for judgment on the pleadings, arguing that Congress did not waive the federal government's sovereign immunity in the CAA for these punitive penalties. The district court denied the Navy's motion and certified its ruling for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We granted the Navy's petition for permission to take the appeal, and now reverse, concluding that Congress did not clearly and unequivocally waive the United States' sovereign immunity from punitive penalties under the CAA. Additionally, we find that removal was not precluded by the CAA and was thus proper under 28 U.S.C. § 1442(a)(1).

I.

Congress, in enacting the CAA, has given the individual states a great responsibility for ensuring that national air quality standards are attained within their geographical areas. *See* 42 U.S.C. § 7406. State and local governments are

2

required to develop plans that provide for implementation, maintenance, and enforcement of national air quality standards.  *See* 42 U.S.C. § 7410.  In addition, § 7416 preserves the states' rights to adopt and enforce their own standards, so long as they are not less stringent than the national standards.  The federal facilities section of the CAA provides that federal facilities "shall be subject to, and comply with, all ... State... and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity." 42 U.S.C. § 7418.  Thus, the Navy facilities located in Jacksonville are subject to both the State and City air pollution regulations.

The City alleges that beginning in 1996 and continuing through 2001, the Navy had violated various state and local air pollution regulations.  These allegations include the following: exceedance of sulfur limiting standards, failure to comply with vapor pressure requirements for various solvents, pressure drop range violations, failure to comply with testing requirements, and record keeping violations.  Of these alleged violations, the City does not claim that any are continuing in nature.  Nonetheless, the City filed a complaint in state court in March 2001, seeking punitive penalties up to $10,000 per occurrence for each past violation.  As amended, the complaint includes seven counts alleging over 250

3

violations.

On April 3, 2001, the Navy removed the case to federal district court pursuant to 28 U.S.C. § 1442(a)(1). The City then filed a motion to remand, arguing that the plain language of the CAA expressly precluded removal under § 1442(a)(1). While this motion was pending, the Navy filed its own motion with the district court for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure, alleging lack of subject matter jurisdiction. The Navy argued that dismissal of the case was proper because the City instituted this action purely to recover punitive penalties, and Congress did not waive the federal government's sovereign immunity with regard to punitive penalties under the CAA.

After oral argument on the issues, the district court denied both motions. The district court found that nothing in the CAA prohibited the Navy from removing the case to federal court, and that the case was otherwise properly removed. With respect to the merits, the district court found that the CAA unequivocally waives the United States' sovereign immunity as to punitive penalties for state and local air pollution control violations. Thereafter, the district court certified its ruling on the sovereign immunity issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). We granted the Navy's petition to bring this

appeal. Although the issue of removal was not certified in the interlocutory appeal, it is properly before this Court because a § 1292(b) appeal brings up the entire district court order. *See Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219-20 (11th Cir. 2001).

## II.

Since the relevant removal statute provides the only basis for federal jurisdiction in this case, we must address this issue first. We review the district court's denial of the City's motion to remand *de novo*. *See Behlen v. Merrill Lynch*, 311 F.3d 1987, 1090 (11th Cir. 2002). 28 U.S.C. § 1442(a)(1) had traditionally provided for removal to federal court for actions involving officers of the United States, and in 1996 Congress amended § 1442(a)(1) so that it now also authorizes removal by the United States and its agencies. *See* 28 U.S.C. § 1442(a)(1). It was pursuant to § 1442(a)(1) that the Navy removed the case against it to federal district court. The City, however, claims that § 7604(e) of the CAA implicitly prohibits removal in this instance. We find no congressional intent, either in the language of § 7604(e) or in the legislative history, to support this contention.

With regard to the merits of this case, the Navy has claimed the defense of sovereign immunity, and thus it is exactly the type of action that Congress

intended to be resolved in federal court. In enacting the 1996 amendments to § 1442(a)(1), Congress recognized that "federal agencies have had to defend themselves in state court, despite important and complex federal issues such as preemption and sovereign immunity." H.R. Rep. No. 104-798, at 20 (1996). Congress' purpose was clearly to provide a federal forum for the sovereign immunity issue at the heart of this case. *See* S. Rep. No. 104-366, at 30-31 (1996), *reprinted in* 1996 U.S.C.C.A.N. 4202, 4210-11 ("This section fulfills Congress' intent that questions concerning the ... scope of Federal immunity ... be adjudicated in Federal Court.").

Despite this clear congressional intent, the City contends that a set of 1977 amendments to the CAA, found in 42 U.S.C. § 7604(e), implicitly prohibit removal in actions by State and local governments against the United States or one of its agencies. The language of § 7604(e) on which the City bases its argument reads as follows:

> Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from–
> (1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court...
> against the United States ... under State or local law respecting control and abatement of air pollution.

42 U.S.C. § 7604(e). As is apparent from the above language, Congress does not explicitly address the issue of removal in § 7604(e). The City argues, however, that unlike 28 U.S.C. § 1441, which provides for removal in instances where there is original jurisdiction in federal courts, there is no language in § 1442 requiring Congress to "expressly" override § 1442 removal in particular circumstances. *Compare* 28 U.S.C. § 1442 *with* 28 U.S.C. § 1441(a) ("Except as otherwise *expressly provided* by Act of Congress, any civil action ... may be removed") (emphasis added). Though the requirement to "expressly provide" is not contained within § 1442(a)(1), in order to find that § 7604(e) precludes removal in this type of action, we must at least find Congress' intent to be "clear and manifest." *See Patel v. Quality Inn S.*, 846 F.2d 700, 704 (11th Cir. 1988) (noting that repeals by implication are disfavored and so to find a repeal by implication Congress' intent must be clear and manifest).

The City claims that the plain language of § 7604(e) unequivocally demonstrates Congress' intent to preclude removal. To support this argument, the City relies on the Ninth Circuit's decision in *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 215 F.3d 1005 (9th Cir. 2000). In *Sacramento*, the Ninth Circuit examined the language of § 7604(e) set forth above, particularly the language authorizing local governments to "obtain" remedies and

sanctions in state court against the United States. *See id.* at 1011. The *Sacramento* court found that unless § 7604(e) precluded removal, plaintiffs could not be guaranteed the right to "obtain" judicial remedies and sanctions in state court. *See id.* The Ninth Circuit also reasoned that § 7604(e) indicates that a plaintiff's right to obtain relief in state court is not to be restricted by "any other law of the United States." *See id.* The court found that "any other law" included the removal statute. *See id.* We respectfully disagree with the Ninth Circuit's reasoning. At the time these amendments to the CAA were written in 1977, the § 1442(a)(1) removal statute did not authorize the federal government or its agencies to remove actions to federal court. Thus, we doubt that Congress in 1977 intended to preclude removal by the United States when sued pursuant to § 7604(e) where it had not even contemplated the authorization of removal by the federal government until it amended § 1442(a)(1) in 1996.

We cannot find a "clear and manifest" intention in the plain language of § 7604(e) to preclude removal in this action. The plain language clearly enables state and local governments to enforce local air pollution regulations in state courts. Nothing, however, in this plain language prevents the United States from removing these actions to federal court. "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-

8

existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). The Ninth Circuit claimed that it was giving full effect to both § 7604(e) and § 1442(a)(1), yet it found that § 7604(e) precludes the application of the removal statute to state and local actions enforcing local air pollution laws against the federal government. By this interpretation of § 7604(e), however, the *Sacramento* court was actually only giving partial effect to these provisions. To the contrary, we find that the plain language of these two statutory provisions do not conflict[1] and accordingly give them both full effect: state and local governments may bring enforcement actions in state courts pursuant to § 7604(e) and the United States may then remove these actions so long as the federal government complies with the requirements of § 1442(a)(1). Such removal is optional, not mandatory.

The City, however, contends that the legislative history of the CAA supports the conclusion that Congress unequivocally intended to preclude removal in actions brought against the United States pursuant to § 7604(e). The legislative

---

[1] We reject as misplaced the Ninth Circuit's analysis regarding the rule of statutory construction. The Ninth Circuit found that the "specific" provision of § 7604(e) controls over the "general" provision of § 1442(a)(1). *See Sacramento*, 215 F.3d at 1013. This analysis would only be appropriate if the two statutory provisions were in conflict. Because there is no conflict between the two provisions, there is no need to determine which "controls."

history does indicate Congress' intent to provide greater assistance to the states in enforcing local air pollution laws against federal facilities. *See* H.R. Rep. No. 95-294, at 2 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1077, 1079. Congress was confronted with federal facilities resisting full compliance of local air pollution laws, and it therefore intended to explicitly make federal facilities subject to these laws. *See* H.R. Rep. No. 95-294, at 197-200. It also intended to enable state and local authorities to bring judicial actions in state or local court pursuant to state or local law. *See* H.R. Rep. No. 95-294, at 201. There is nothing, however, in any of this legislative history that gives any indication that Congress intended to prevent removal of these actions to federal court, especially when important federal issues, such as sovereign immunity, must be resolved. In fact, the legislative history of the 1977 amendments contains explicit evidence that Congress did not intend to prohibit removal. *See* H.R. Conf. Rep. No. 95-564, at 137 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1502, 1518. Congress deleted a provision in the final version of the 1977 amendments that would have barred removal of suits against federal facilities to federal courts. *See* H.R. Conf. Rep. No. 95-564, at 137. We disagree with the Ninth Circuit's assumption that had this language been included, it would have simply been redundant. *See Sacramento*, 215 F.3d at 1012. Such an assumption is directly contrary to the clear instructions of the Supreme Court.

10

"Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended." *Russello v. United States*, 464 U.S. 16, 23-24 (1983).

The City then calls this Court's attention to particular language in the Clean Water Act ("CWA"), which was enacted the same year as the CAA, and whose language is identical to the CAA in many respects. *See* H.R. Conf. Rep. No. 95-830, at 93 (1977), *reprinted in* U.S.C.C.A.N. 4424, 4468. The CWA expressly authorizes removal of actions against the United States. *See* 33 U.S.C. § 1322(a). This provision in the CWA, however, does not grant a right of removal, for the substantive right of removal is found in § 1441 *et. seq.*; rather, this provision is merely an express intent not to preclude the already existing right. The absence of this express language in the CAA preserving the right of removal cannot provide a basis to preclude removal without any express affirmative support indicating that such is the intent of Congress.

After examining the legislative histories of § 1442(a)(1) and § 7604(e), we find no clearly expressed congressional intent indicating that these two statutory provisions cannot each be given full effect. Congress' intent to enable state and local governments to enforce local air pollution laws in state courts does not conflict with Congress' intent to give federal agencies the option of removing

11

appropriate cases to federal court. It is clear that Congress intended to make it possible for federal courts to resolve issues like sovereign immunity. Cases removed under § 1442(a)(1) ordinarily assert such a defense. *See Magnin v. Teledyne Continental Motors*, 91 F.3d 1424, 1427 (11th Cir. 1996) (finding that in order for a state court action against a federal officer to be removable, there must be an assertion of a federal defense).[2] Thus, although § 7604 contemplates state and local governments enforcing local air pollution laws in state courts, if there is a federal issue involved such as sovereign immunity, Congress recognized that the wholly local nature of the action disappears. In this instance, pursuant to Congress' intent in enacting § 1442(a)(1), it is appropriate for the case to be heard in federal court.

Whereas § 7604(e) does not unequivocally prohibit removal, § 1442(a)(1) explicitly and unambiguously gives the federal government the right to remove actions in which they are named as a defendant to federal court. Despite Congress' intent to authorize enforcement of local air pollution laws in state courts, we find no intent in the legislative history or plain language of § 7604(e) to preclude removal. Congress has demonstrated in other statutes that it can

---

[2] We recognize that it remains to be decided whether the requirement of a federal defense also applies to removal by the United States or one of its agencies. *See Parker v. Della Rocco, Jr.*, 252 F.3d 663, 665 n.2 (2d Cir. 2001). However, we need not make a determination regarding this issue as the Navy in this case has clearly asserted the federal defense of sovereign immunity.

12

unequivocally preclude removal in certain instances if it chooses.  *See Breuer v. Jim's Concrete of Brevard, Inc.*, 292 F.3d 1308, 1310 (11th Cir. 2002) (*citing* 28 U.S.C. § 1445; 15 U.S.C. § 77v(a); 15 U.S.C. § 3612), *aff'd*, 123 S.Ct. 1882 (2003).  Nevertheless, there is legislative history that demonstrates that Congress expressly refused to do that here.  *See* H.R. Conf. Rep. No. 95-564, at 137.  Accordingly, we conclude that the Navy properly removed this action to the federal district court pursuant to § 1442(a)(1), and we therefore have subject matter jurisdiction to hear the merits of this case.

### III.

The City is seeking punitive penalties for the Navy's alleged *past* violations of local air pollution laws.  The Navy concedes that had the City alleged *continuing* air pollution violations, the federal government would be subject to coercive sanctions, such as an injunction or coercive fines, under the CAA.  The City, however, makes no allegation of any continuing violations, and so only seeks punitive penalties for the past violations.  The Navy claims that it is not subject to these penalties as a matter of law, as Congress has not waived the United States' sovereign immunity from punitive sanctions under the CAA.

The City maintains that punitive penalties are necessary for effective enforcement of local air pollution laws, and the City encourages this Court to find

a waiver in the statute on this basis. However, even without the availability of punitive penalties, federal facility compliance can still be accomplished through the use of coercive sanctions, such as injunctions and coercive fines. Moreover, the Supreme Court rejected a similar argument made by the state of Ohio arguing that coercive fines are not a sufficient deterrent under the CWA:

> to say that ... 'compliance cannot be... accomplished' without such [coercive] fines is to assume that without sanctions for past conduct a federal polluter can never be brought into future compliance, that an agency of the National Government would defy an injunction backed by coercive fines and even a threat of personal commitment. The position seems almost to ignore the fact that once such fines start running they can be every dollar as onerous as their punitive counterparts; it could be a very expensive mistake to plan on ignoring the law indefinitely on the assumption that contumacy would be cheap.

*United States Dep't of Energy v. Ohio*, 503 U.S. 607, 625 (1992).

In order for this Court to find a waiver of sovereign immunity with regard to punitive penalties, it must be unequivocally expressed in the statutory text. *See Lane v. Pena*, 518 U.S. 187, 192 (1996). Any waiver of immunity must be strictly construed in favor of the sovereign, and it cannot be enlarged beyond what the statutory language allows. *See id. See also United States Dep't of Energy*, 503 U.S. 607 at 615. Moreover, where a waiver would authorize payments from the

federal treasury, as the City claims the waiver in the CAA does, it "must extend unambiguously to such monetary claims." *Lane*, 518 U.S. at 192. It is pursuant to these above principles that we conclude that neither the federal facilities section of the CAA, 42 U.S.C. § 7418(a), nor its citizen suit provision, 42 U.S.C. § 7604(e), clearly and unequivocally waive the United States' sovereign immunity from punitive penalties.

## A.

The City first claims that the federal facilities provision of the CAA, 42 U.S.C. § 7418(a), waives the United States' sovereign immunity with regard to punitive penalties. The relevant language of the federal facilities provision reads as follows:

> Each department, agency, and instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge of air pollutants, and each officer, agent, or employee thereof, **shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution** in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any

15

other requirement whatsoever), (B) to any requirement to pay a fee or charge imposed by any State or local agency to defray the costs of its air pollution regulatory program, (C) to the exercise of any Federal, State, or local administrative authority, and (D) **to any process and sanction, whether enforced in Federal, State, or local courts, or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.** No officer, agent, or employee of the United States shall be personally liable for any civil penalty for which he is not otherwise liable.

42 U.S.C. § 7418(a) (emphasis added). Neither the United States Supreme Court nor any other circuit court has yet addressed whether § 7418(a) waives the federal government's sovereign immunity from punitive penalties[3]; however, the Supreme Court has addressed this issue in the context of the CWA federal facilities provision, 33 U.S.C. § 1323(a), which has similar, if not identical, language to the relevant portion of the federal facilities provision of the CAA.[4] *See United States*

---

[3] The Sixth Circuit, however, has found that Congress waived the federal government's sovereign immunity from punitive penalties under the CAA in the citizen suit provision, 42 U.S.C. § 7604(e). *See United States v. Tenn. Air Pollution Control Bd.*, 185 F.3d 529 (6th Cir. 1999).

[4] Indeed, the CWA federal facilities provision was written to conform to the CAA federal facilities provision. *See* H.R. Conf. Rep. No. 95-830, at 93 (1977), *reprinted in* 1977 U.S.C.C.A.N. 4424, 4468. The relevant language of the CWA federal facilities provision provides:

Each department, agency, or instrumentality of the executive, legislative, and judicial branches of the Federal Government (1) having jurisdiction over any property or facility, or (2) engaged in any activity resulting, or which may result, in the discharge or runoff of pollutants, and each officer, agent, or employee thereof in the performance of his official duties, **shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of water pollution** in the same manner, and to the same extent

16

*Dep't of Energy v. Ohio*, 503 U.S. 607 (1992).

In *United States Department of Energy*, the Supreme Court found that although the CWA federal facilities section waived the federal government's sovereign immunity with regard to coercive sanctions, the language did not unequivocally waive immunity from punitive penalties.[5] *See id.* at 627. The Supreme Court rejected Ohio's claim that since the federal government was subject to "sanctions" under 33 U.S.C. § 1323(a), this necessarily included punitive sanctions. *See id.* at 621. The Court found that the term sanction "is spacious enough to cover not only what we have called punitive fines, but

as any nongovernmental entity including the payment of reasonable service charges. The preceding sentence shall apply (A) to any requirement whether substantive or procedural (including any recordkeeping or reporting requirement, any requirement respecting permits and any other requirement whatsoever), (B) to the exercise of any Federal, State, or local administrative authority, and (C) **to any process and sanction, whether enforced in Federal, State, or local courts or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law....** No officer, agent, or employee of **the United States shall be personally liable for any civil penalty arising from the performance of his official duties, for which he is not otherwise liable, and the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court.**

33 U.S.C. § 1323(a) (emphasis added).

[5] The Supreme Court also held that there was no waiver of sovereign immunity from punitive penalties under the federal facilities provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6961, as well as no waiver from these penalties under the citizen suit provisions of both the RCRA, 42 U.S.C. § 6972(a), and CWA, 33 U.S.C. § 1365(a). *See United States Dep't of Energy*, 503 U.S. at 611. Since *United States Department of Energy*, at least two district courts have followed the Supreme Court's reasoning to find that the CAA also does not waive sovereign immunity with regard to punitive penalties. *See California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, 29 F. Supp. 2d 652 (E.D. Calif. 1998), *vacated for want of jurisdiction,* 215 F.3d 1005 (9th Cir. 2000); *United States v. Ga. Dep't of Natural Res.*, 897 F. Supp. 1464 (N.D. Ga. 1995).

coercive ones as well, and use of the term carries no necessary implication that a reference to punitive fines is intended." *Id.* at 621. Thus, to determine what the term "sanction" refers to in the CAA federal facility provision, 42 U.S.C. § 7418(a), we must examine its context. *See id.* at 622. As is the case in the CWA federal facilities provision, 33 U.S.C. § 1323(a), each time the word "sanction" appears in § 7418(a) of the CAA, it is within the phrase "process and sanction[s]." The Supreme Court found it significant that "sanction" was paired with "process" because " '[p]rocess' normally refers to the procedure and mechanics of adjudication and the enforcement of decrees or orders that the adjudicatory process finally provides." *Id.* at 623. The pairing of "process" and "sanctions" can be contrasted with the absence of the word "sanctions" when the text speaks of subjecting the federal government to substantive "requirements." *See* 42 U.S.C. § 7418(a); *United States Dep't of Energy*, 503 U.S. at 623. This is significant because substantive "requirements," as opposed to "process," may be enforced by punitive penalties. *See United States Dep't of Energy*, 503 U.S. at 623. Thus, we follow the Supreme Court's reasoning and conclude that because the text uses the term "sanction" in the context of enforcing "process" as opposed to substantive "requirements," there is "good reason to infer that Congress was using 'sanction' in its coercive sense, to the exclusion of punitive fines." *Id.* at 623.

The City, however, argues that despite the almost identical language found in the federal facilities provisions of the CWA, 33 U.S.C. 1323(a), and the CAA, 42 U.S.C. § 7418(a), there are material differences between the two provisions that mandate a different result. In *United States Department of Energy*, the Supreme Court did discuss particular language in the CWA that is not present in the CAA. The CWA federal facilities provision provides, in relevant part, that "the United States shall be liable only for those civil penalties... imposed by a State or local court to enforce an order or the process of such court." 33 U.S.C. § 1323(a). The Supreme Court found that this language serves a clarifying function in that it makes it apparent that the civil penalties referred to in this section must be limited to coercive sanctions. *See United States Dep't of Energy*, 503 U.S. at 623-24. The City argues that the absence of this clarifying language in the CAA federal facilities provision must lead to the conclusion that Congress did not intend to limit the federal government's liability to only coercive sanctions.[6] This language,

---

[6] The City further notes that although Congress omitted this clarifying language in the CAA, it did not also omit the preceding phrase stating that "[n]o officer, agent, or employee of the United States shall be personally liable for a civil penalty... for which he is not otherwise liable." 42 U.S.C. § 7418(a); 33 U.S.C. § 1323(a). The City claims that the presence of this language in the CAA is significant when taken together with the absence of the clarifying language. Specifically, the City argues that since Congress only exempted these particular individuals from civil penalties, it necessarily did not intend to exempt agencies of the United States. However, if the term "civil penalties" as used in this section refers only to coercive penalties (and there is nothing in this language to indicate otherwise), then it is to no significance that Congress left out the clarifying language, as Congress already subjected agencies of the United States to coercive penalties within the language "process and sanctions." Further, if Congress intended to

19

however, did not serve as the basis for the Supreme Court's decision in *United States Department of Energy*; rather, the Court found that this language simply *confirmed* the conclusion it had already reached in analyzing the phrase "process and sanctions." *Id.* at 624. Moreover, the absence of this language in § 7418(a) of the CAA does not make any kind of affirmative statement. For this Court to find that Congress intended to waive the government's immunity from punitive penalties, there must be an unequivocal statement within the statutory language itself. *See Lane*, 518 U.S. at 192. Indeed, the only affirmative and unequivocal language indicating the scope of the government's immunity is within the language we analyzed above discussing "process and sanctions." From this express affirmative language, we conclude that the federal facilities section of the CAA unequivocally waives the federal government's sovereign immunity from coercive sanctions, but not from punitive penalties.

B.

The City next contends that even if the federal facilities section, 42 U.S.C. § 7418(a), does not waive the United States' sovereign immunity from punitive

---

personally subject officers, agents, and employees of the United States to limited coercive sanctions, such as injunctions, but not to coercive fines, it seems sensible for Congress to make this clear with an additional sentence using the narrower term, "civil penalties," as opposed to the broader term, "sanctions," as sanctions typically include such things as injunctions as well as penalties, whereas the term "civil penalties" indicates monetary payment.

penalties, waiver can still be found in the citizen suit provision, 42 U.S.C. §

7604(e). This subsection provides:

> Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). **Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from–**
> > **(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, ...**
> **against the United States ... under State or local law respecting control and abatement of air pollution.** For provisions requiring compliance by the United States ... in the same manner as nongovernmental entities, see section 7418 of this title.

42 U.S.C. § 7604(e) (emphasis added). The Navy argues that this provision is not

an independent waiver of sovereign immunity, but is merely a savings clause

providing only that the citizen suit provision does not preempt any other available

remedies. With respect to the first sentence of this subsection, we agree with the

Navy that it does serve as a savings clause. *See Tenn. Air Pollution Control Bd.*,

185 F.3d at 532; *Virginia v. United States*, 74 F.3d 517, 524 (4th Cir. 1996). *See*

*also City of Milwaukee v. Illinois and Michigan*, 451 U.S. 304, 328-29 n.22 (1981)

(finding § 1365(e) of the CWA, with language "virtually identical" as the first

sentence of § 7604(e) of the CAA, to be a savings clause). We disagree, however, with the Navy's contention that the second sentence is also only a savings clause.

If the second sentence of § 7604(e) is simply a savings clause, then it would merely be duplicating the first sentence. This second sentence was added within the 1977 amendments to the CAA. Clean Air Act Amendments of 1977, Pub. L. No. 95-95, § 303(c), 91 Stat. 685, 772 (1977). Prior to these amendments, state and local governments had no remedy in state courts against the United States for violation of local air pollution laws. *See Hancock v. Train*, 426 U.S. 167, 195-96 (1976). Thus, this provision could not have been intended as simply a savings clause, as there was no local remedy to "save" at the time Congress added these amendments. Congress' intent to make this sentence a waiver of sovereign immunity is clear from the language providing that "[n]othing in this section or in any other law of the United States" shall restrict any state or local government's right to bring an enforcement action in state court. 42 U.S.C. § 7604(e). Accordingly, this citizen suit provision, along with the federal facilities section, operates as a waiver of sovereign immunity.

Although we find that the citizen suit provision, 42 U.S.C. § 7604(e), acts as a waiver of sovereign immunity, we do not find the scope of the waiver to exceed that found in the federal facilities section, 42 U.S.C. § 7418(a). The City argues

22

that the language in § 7604(e) allowing the City to obtain "any judicial remedy or sanction" in state court necessarily includes punitive penalties.[7]  Specifically, the City relies on a Sixth Circuit decision where the court reasoned that because the phrase "remedy or sanction" is not paired with the word "process" as in the federal facilities section, there is no basis to conclude that "remedy or sanction" excludes punitive penalties.[8]  *See Tenn. Air Pollution Control Bd.*, 185 F.3d at 534.  We respectfully disagree with the Sixth Circuit's broad interpretation of this phrase, as we must adhere to the Supreme Court's rationale that the phrase "remedy or sanction," by itself, "carries no necessary implication that a reference to punitive fines is intended."  *See United States Dep't of Energy*, 503 U.S. at 621.

Accordingly, as the Supreme Court directed in *United States Department of Energy*, we must look at the phrase "remedy or sanction" in context.  In examining

---

[7] The City also argues that additional language in this subsection, allowing state and local governments to obtain "any administrative remedy or sanction," necessarily encompasses punitive penalties.  The Sixth Circuit noted that to construe this language "as limited to prospective, coercive action would be to render § 7604(e)(2) virtually meaningless, since administrative agencies are seldom empowered to take prospective, coercive action."  *See Tenn. Air Pollution Control Bd.*, 185 F.3d at 532 n.3.  However, since the City does not seek an administrative remedy in this action, we have no need to interpret § 7604(e)(2), as the City contends that a waiver with regard to punitive penalties for a judicial action is to be found in § 7604(e)(1).  Nonetheless, it is worth noting that the Sixth Circuit's reasoning is merely inferential, and to find a waiver from punitive penalties, the waiver must be clear and unequivocal within the statutory text.

[8] Just as the term "sanction" is "spacious enough to cover not only what we have called punitive fines, but coercive ones as well," *United States Dep't of Energy*, 503 U.S. at 621, so is the word "remedy."  *See Black's Law Dictionary* 1296 (7th ed. 1999) ("The means of enforcing a right or preventing or redressing a wrong.").

§ 7604(e), there is no language indicating whether the phrase should be read broadly to encompass punitive penalties or narrowly to exclude these penalties.[9] The lack of any clarifying language within the citizen suit provision does not give this Court the authority to presume that Congress intended the broadest conceivable definition of "remedy or sanction." *See Lane*, 518 U.S. at 192 ("a waiver of the Government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign."). Rather, instead of presuming a broad interpretation of the citizen suit provision by reading it in isolation, we will interpret this section "in light of the remainder of the statute of which it is a part." *See Tenn. Air Pollution Control Bd.*, 185 F.3d at 534 (suggesting that the federal facilities section of the CAA should be interpreted in light of its conclusion that the citizen suit provision waives the United States' sovereign immunity from punitive penalties). In this respect, we turn to the federal facilities section of the CAA. The federal facilities provision was written in conjunction with 42 U.S.C. § 7604(e), and both provisions discuss the parameters of local air pollution

---

[9] The Sixth Circuit in *Tennessee Air Pollution Control Board*, as well as the district court in this case, relied on the word "any" in front of the phrase "remedy or sanction" to support a finding that the citizen suit provision expressly waives the federal government's sovereign immunity from punitive penalties. Nonetheless, the Supreme Court did not find the term "any" paired with the word "sanction" to be significant in concluding that the federal facilities sections of both the CWA and RCRA did not waive the federal government's sovereign immunity from punitive penalties. *See United States Dep't of Energy*, 503 U.S. at 622-28. Accordingly, we do not find the term "any" paired with the phrase "remedy or sanction" to be much help in this instance.

enforcement in state and local courts. Moreover, the federal facilities section is referenced within § 7604(e). As discussed above, the scope of the waiver of sovereign immunity within the federal facilities section is limited to coercive sanctions. Given this finding, without express intent from Congress to indicate otherwise, we will not interpret the broad language of the citizen suit provision to provide a larger scope of waiver of immunity.

We have found no affirmative and unequivocal waiver of the federal government's sovereign immunity from punitive penalties within the statutory text of either the federal facilities section or the citizen suit provision of the CAA. Congress is aware of this unequivocal language requirement, as it amended the federal facilities section of the RCRA after the Supreme Court in *United States Department of Energy* initially found there to be no express waiver from punitive penalties. Federal Facility Compliance Act of 1992, Pub. L. No. 102-386, § 102, 106 Stat. 1505 (1992). There is now clear and unequivocal language in the RCRA waiving the United State's sovereign immunity from these punitive fines. *See* 42 U.S.C. § 6961 (stating the requirements referred to in this section include "all civil and administrative penalties and fines, regardless of whether such penalties or fines are punitive or coercive in nature..."). Nonetheless, Congress, though it had the opportunity to do so, did not amend either the CWA or the CAA (which

25

contains almost identical language to the CWA) in response to *United States Department of Energy*. Accordingly, we find that the Navy would be subject to coercive sanctions under the language of the CAA. However, without an unequivocal statement within the statutory language itself, we decline the invitation to find that Congress intended to waive the federal government's sovereign immunity from punitive penalties.

IV.

In conclusion, we affirm the district court's denial of the City's motion to remand, and find that the Navy properly removed this action to the federal district court pursuant to § 1442(a)(1). We reverse the district court's finding that the CAA waives the United States' immunity from punitive penalties, and therefore remand this case for entry of judgment in favor of the Navy.

**AFFIRMED in part; REVERSED in part; REMANDED with instructions.**