**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 20-1783**

STATE OF NORTH CAROLINA, EX REL.; ELIZABETH S. BISER; NORTH
CAROLINA DEPARTMENT OF ENVIRONMENTAL QUALITY, Division of
Air Quality,

> Plaintiffs – Appellants,

> v.

UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE
NAVY; UNITED STATES MARINE CORPS; MARINE CORPS AIR STATION
CHERRY POINT,

> Defendants – Appellees.

Appeal from the United States District Court for the Eastern District of North Carolina, at
Greenville.  Terrence W. Boyle, District Judge.  (4:20-cv-00016-BO)

Argued:  May 5, 2021                                      Decided:  July 29, 2021

Before MOTZ, KING, and AGEE, Circuit Judges.

Affirmed in part, reversed in part, and remanded for further proceedings by published
opinion.  Judge Motz wrote the opinion, in which Judge King joined.  Judge Agee wrote
an opinion concurring in part and dissenting in part.

**ARGUED:**  Sarah Gardner Boyce, NORTH CAROLINA DEPARTMENT OF JUSTICE,
Raleigh, North Carolina, for Appellants.  Robert Lundman, UNITED STATES
DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.  **ON BRIEF:**  Joshua H.

Stein, Attorney General, Ryan Y. Park, Solicitor General, Mary S. Crawley, Assistant Attorney General, NORTH CAROLINA DEPARTMENT OF JUSTICE, Washington, D.C., for Appellant. Jonathan D. Brightbill, Principal Deputy Assistant Attorney General, Eric Grant, Deputy Assistant Attorney General, David Gunter, Environment and Natural Resources Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

DIANA GRIBBON MOTZ, Circuit Judge:

After a coal-powered Marine Corps facility failed an air quality compliance test, and so violated its state permit, North Carolina assessed a civil penalty against it. The Marine Corps facility refused to pay, so North Carolina brought suit in state court, seeking recovery of the unpaid penalty. The federal government defendants ("the United States") removed the case to federal court and sought dismissal, contending that the Clean Air Act does not waive sovereign immunity as to punitive civil penalties. North Carolina moved to remand the case to state court and, alternatively, opposed dismissal on sovereign immunity grounds.

The district court held for the United States on both fronts and dismissed the case. Because the Clean Air Act does not preclude removal but does waive sovereign immunity as to the penalty at issue here, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

For several years, Marine Corps Air Station Cherry Point ("Cherry Point"), located in Craven County, North Carolina, generated heat from coal-fired steam boilers. Federal law requires all nonexempt federal facilities "engaged in any activity resulting . . . in the discharge of air pollutants," including Cherry Point, to comply with state air quality provisions. *See* 42 U.S.C. § 7418(a). To that end, in 2014, Cherry Point obtained a North Carolina-issued permit authorizing operation of its steam boilers but imposing a cap on the emission of certain hazardous air pollutants.

3

Two years later, Cherry Point conducted mandatory tests to determine its compliance with the permit's limitations. Upon reviewing the results, North Carolina concluded that one of Cherry Point's steam boilers dramatically exceeded the permit's emissions cap. In light of this violation, the state imposed a civil penalty on Cherry Point of $8,000, plus $472 in investigation costs. When assessing the penalty, North Carolina also notified Cherry Point that, under state law, it had thirty days to submit payment, request remission, or file a petition for an administrative hearing.

Cherry Point did none of the above. Instead, it sent a letter to North Carolina maintaining that it need not pay the penalty "based on the legal principle of Federal sovereign immunity." Because Cherry Point declined to submit a signed remission form, North Carolina concluded that it could not process Cherry Point's letter as a remission request.

After two years of stalemate, North Carolina filed this suit in the Superior Court of Craven County, North Carolina, seeking recovery of the penalty, investigation costs, and accrued interest. A month later, the United States removed the case to the United States District Court for the Eastern District of North Carolina.

Once in federal district court, the United States moved to dismiss on sovereign immunity grounds. The following day, North Carolina filed a motion to remand the case to state court, contending that the Clean Air Act precludes removal. In the alternative, North Carolina opposed the motion to dismiss, arguing that two provisions of the Clean Air Act unambiguously waive the federal government's sovereign immunity as to punitive civil penalties levied pursuant to state air pollution laws. The district court agreed with the

4

United States on both issues:  It upheld removal and dismissed the case.  North Carolina timely noted this appeal.  We review the district court's resolution of both issues *de novo*. *See Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 209 (4th Cir. 2016); *Pittston Co. v. United States*, 199 F.3d 694, 701 (4th Cir. 1999).

II.

We begin with the propriety of removal.  The United States ordinarily enjoys an absolute right to remove cases to federal court.  North Carolina, however, contends that the Clean Air Act carves out a novel exception to that right.  Upon close examination, we cannot agree.

The United States removed this case pursuant to the federal officer removal statute, which provides that "[a] civil action . . . that is commenced in a State court and that is against . . . [t]he United States or any agency thereof" may be transferred to federal district court.  28 U.S.C. § 1442(a)(1).  The Supreme Court has long "held that that the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal 'should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1).'"  *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).  To that end, § 1442(a)(1) "ensure[s] a federal forum in *any case* where a federal [defendant] is entitled to raise a [federal] defense."  *Id.* at 241 (emphasis added); *see also Jefferson Cty., Ala. v. Acker*, 527 U.S. 423, 447 (1999) (Scalia, J., concurring in part and dissenting in part) (noting that "the main point" of § 1442(a)(1) is to give federal defendants "a federal forum in which to litigate the

5

merits of immunity defenses"). In 1996, when Congress amended § 1442(a)(1) to include "the United States or any agency thereof," Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 206, 110 Stat. 3847, 3850, it did so to "fulfill[] Congress' intent that questions concerning . . . the scope of Federal immunity . . . [would] be adjudicated in Federal court," S. Rep. 104-366, at 31 (1996); H.R. Rep. 104-798, at 20 (1996) (same).

The United States' defense in this case — sovereign immunity — squarely implicates § 1442(a)(1)'s core purpose. Nonetheless, North Carolina argues that the Clean Air Act's state suit provision, 42 U.S.C. § 7604(e), implicitly "carves out a narrow exception" to removal that precludes federal court adjudication of this federal immunity defense. Opening Br. at 33. In relevant part, § 7604(e) provides:

> Nothing . . . in any other law of the United States shall be construed to prohibit, exclude, or restrict any State . . . from bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court . . . against the United States . . . under State or local law respecting control and abatement of air pollution.

42 U.S.C. § 7604(e).

Relying on the Ninth Circuit's decision in *California ex rel. Sacramento Metro. Air Quality Mgmt. Dist. v. United States*, North Carolina contends that § 7604(e) "guarantee[s] the right of state and local governments to *obtain* judicial remedies and sanctions in state and local courts." 215 F.3d 1005, 1011 (9th Cir. 2000). As such, North Carolina argues that § 7604(e) tacitly "nullifies" any law "that operates to 'prohibit, exclude, or restrict' a State from securing judicial relief against the federal government" in state court. Opening Br. at 26 (quoting 42 U.S.C. § 7604(e)). In North Carolina's view, § 1442(a)(1) constitutes such a law because removal prevents a state court from proceeding "further unless and until

6

the case is remanded," *BP P.L.C. v. Mayor & City Council of Balt.*, No. 19-1189, slip op. at 8 (U.S. 2021) (quoting 28 U.S.C. § 1446(d)), thus precluding the state court from granting relief. Accordingly, North Carolina says, § 7604(e) "overrides" § 1442(a)(1) and so requires North Carolina's suit — and the United States' federal defense — to be litigated in state court. Opening Br. at 28.

The parties agree that "when two statutes are capable of co-existence," we cannot say that one nullifies the other "absent a clearly expressed congressional intent" to that effect. *Morton v. Mancari*, 417 U.S. 535, 551 (1974). Without such indication, our "duty" is to "regard [both statutes] as effective." *Id.* Accordingly, if § 7604(e) and § 1442(a)(1) are capable of co-existence and Congress has not clearly expressed a contrary intent, we must regard § 1442(a)(1) as effective — and unaltered by § 7604(e).

These "two statutes are capable of co-existence." *Morton*, 417 U.S. at 551. Contrary to North Carolina's argument, § 7604(e) does not require actions brought in state court to remain there. North Carolina claims that "nothing" — not even the United States' absolute right of removal — may prevent North Carolina from "obtaining" remedies "in state court." 42 U.S.C. § 7604(e). Yet it concedes that "procedural constraints and valid substantive defenses" cabin its ability to "obtain" relief. Reply Br. at 6. Thus, even North Carolina recognizes that, unlike § 1442(a)(1), § 7604(e) does not confer an absolute right.

Rather, as the Clean Air Act's drafters confirmed, § 7604(e) codifies Congress's intent to "authorize States to sue Federal facilities in State courts, and to subject such facilities to State sanctions." H.R. Rep. No. 95–564, at 137 (1977). Removal in no way impedes those grants of authority. It does not prevent states from bringing enforcement

7

actions or levying penalties against federal facilities. Section 1442(a)(1) merely ensures that colorable federal defenses — such as the sovereign immunity defense at issue here — do not depend on the "varying" whims of state courts. *Tennessee v. Davis*, 100 U.S. 257, 266 (1879). As such, we perceive no conflict between these statutes that requires nullification of § 1442(a)(1). *Cf. United States v. Mitchell*, 39 F.3d 465, 473 (4th Cir. 1994) (holding that statutes do not conflict where one "in no way impairs the effectiveness of the" other).[1]

Congress has certainly not expressed, let alone "clearly expressed," a contrary intent. *Morton*, 417 U.S. at 551. When discerning congressional intent, we begin with statutory text. *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). Here, § 7604(e)'s express language is of no aid to North Carolina: On its face, the provision contains no reference to removal. Section 7604(e), quite unlike numerous statutes that explicitly limit removal (*see, e.g.*, 15 U.S.C. §§ 77v(a), 1719, 3612; 28 U.S.C. § 1445), is conspicuously silent on the matter. And, as the Supreme Court has recognized, "[w]hen Congress has 'wished to give plaintiffs an absolute choice of forum, it has shown itself capable of doing so in unmistakable terms.'" *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 697 (2003) (quoting *Cosme Nieves v. Deshler*, 786 F.2d 445, 450 (1st Cir. 1986)).

---

[1] Relying on the general-specific rule of construction, North Carolina suggests that these two provisions may coexist, but only if § 1442(a)(1)'s "more general" rule yields to § 7604(e)'s "more specific" language. Opening Br. at 32–33. However, "the general-specific rule of construction applies only when specific and general statutory provisions conflict." *Lara-Aguilar v. Sessions*, 889 F.3d 134, 142 (4th Cir. 2018) (quotation marks omitted). Here, there is no conflict, so the rule is inapt.

Nor does anything in § 7604(e)'s plain text — including its indication that no "other law" may "restrict" states from "obtaining" relief "in state court" — even *implicitly* create an exception to § 1442(a)(1).  Indeed, Congress could not have intended the words "other law" to reference the removal statute, for at the time of § 7604(e)'s enactment, § 1442(a)(1) did not authorize removal by federal facilities.  *See City of Jacksonville v. Dep't of Navy*, 348 F.3d 1307, 1311 (11th Cir. 2003); *see also Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 76 (1991).

Moreover, the neighboring provisions of the Clean Air Act critically undermine North Carolina's theory as to this removal exception.  According to North Carolina, § 7604(e) guarantees it a state forum because Congress "belie[ved] that state court adjudication of state law issues was of paramount importance in air pollution control matters."  *United States v. Puerto Rico*, 721 F.2d 832, 838 (1st Cir. 1983).  But this supposed belief cannot be squared with the Clean Air Act's *express* grant of concurrent jurisdiction to federal district courts.  *See* 42 U.S.C. §§ 7604(a) (providing that "the district courts shall have jurisdiction" over actions concerning state "emission standard[s] or limitation[s]"), 7604(c) (providing that actions "respecting a violation by a stationary source . . . may be brought only in the judicial district in which such source is located"), 7602(e) (providing that such actions may be brought in federal court by a "State" or "political subdivision of a State").  Far from demonstrating an absolute preference for "nonfederal" courts, *Sacramento Metro. Air Quality Mgmt.*, 215 F.3d at 1012, the Clean Air Act repeatedly indicates that Congress intended state air pollution lawsuits to be litigated in state *and* federal courts.

9

Legislative history is similarly unhelpful to North Carolina's cause. To be sure, Congress lamented the federal government's "obstinate[]" refusal to comply with state air pollution laws, H.R. Rep. No. 95-294, at 199 (1977), and sought to expand states' enforcement capabilities, *id.* at 2, but this does not demonstrate an intention to "establish a detour around a federal forum," *Puerto Rico*, 721 F.2d at 838. In fact, the drafters' only reference to removal indicates that legislators "*delete[d]* a provision which barred removal of suits against Federal facilities to Federal courts." H.R. Rep. No. 95–564, at 137 (1977) (emphasis added). While the Ninth Circuit hypothesizes that Congress considered this provision redundant, *Sacramento Metro. Air Quality Mgmt. Dist.*, 215 F.3d at 1012, the Supreme Court directs us to draw the opposite inference, *Russello v. United States*, 464 U.S. 16, 23–24 (1983) ("Where Congress includes limiting language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the limitation was not intended.").

At bottom, North Carolina urges us to endorse an idiosyncratic exception to an ordinarily absolute right. *Manypenny*, 451 U.S. at 242. When pressed at oral argument, North Carolina could not identify *any* other provision that similarly frustrates the United States' right of removal. *See* Oral Arg. at 6:17–6:41. We decline to reach such an anomalous result today. Accordingly, we conclude, as the district court held, that the United States properly removed this suit.

10

III.

We now turn to sovereign immunity. North Carolina contends that this suit should not be dismissed because the Clean Air Act waives the United States' immunity as to punitive civil penalties assessed pursuant to state air pollution law. The United States counters that, while the Clean Air Act does waive its immunity, it does so only as to "coercive civil penalties — that is, penalties that induce a noncompliant federal agency to comply with state emissions limitations" — not punitive penalties like that at issue here. United States Br. at 1.

A waiver of sovereign immunity "must be unequivocally expressed in statutory text." *Lane v. Pena*, 518 U.S. 187, 192 (1996). However, "Congress need not state its intent [to waive sovereign immunity] in any particular way" or employ "magic words." *F.A.A. v. Cooper*, 566 U.S. 284, 291 (2012). And while a court must construe ambiguous text in favor of immunity, *Lane*, 518 U.S. at 192, it cannot "import immunity back into a statute designed to limit it," *Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955).

North Carolina maintains the Clean Air Act contains two waivers as to *all* civil penalties, including punitive penalties. The first is the federal facilities provision, which provides:

> Each department, agency, and instrumentality of . . . the Federal Government . . . shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution . . . whether enforced in Federal, State, or local courts, or in any other manner. This subsection shall apply notwithstanding any immunity of such agencies, officers, agents, or employees under any law or rule of law.

42 U.S.C. § 7418(a).

11

Relying on *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607 (1992) [hereinafter *DOE*], the United States insists that § 7418(a) waives immunity only as to penalties imposed to compel a recalcitrant party's compliance, not those assessed as punishment for past violations. In *DOE*, the Supreme Court interpreted a similar provision in the Clean Water Act, 33 U.S.C. § 1323(a), and determined that its repeated pairing of the word "sanctions" with the word "process" meant that "Congress was using 'sanction' in its coercive sense, to the exclusion of punitive fines," *DOE*, 503 U.S. at 623 (holding that § 1323(a) only contemplates "forward-looking orders" such as "equity's traditional coercive sanctions for contempt"). The United States maintains that the appearance of the phrase "process and sanctions" in § 7418(a) necessitates the same result.

In response, North Carolina notes that, unlike § 7418(a), the provision at issue in *DOE* expressly limits federal liability under state law to coercive civil penalties. *See* 33 U.S.C. § 1323(a) (providing that "the United States shall be liable only for those civil penalties . . . imposed by a State or local court to enforce an order or the process of such court"); *DOE*, 503 U.S. at 624–27 (holding that this "proviso serves to confirm" and "clarify" the provision's sovereign immunity waiver). And, given that § 7418(a) and § 1323(a) were enacted mere months apart, North Carolina contends that this omission — the "critical textual difference" — means the rationale in *DOE* does not control the proper interpretation of § 7418(a). Opening Br. at 60.

Multiple courts — before and after *DOE* — have adopted North Carolina's view of § 7418(a)'s waiver of sovereign immunity. *See, e.g.*, *United States v. Tennessee Air Pollution Control Bd.*, 967 F. Supp. 975, 981 (M.D. Tenn. 1997), *aff'd on other grounds*,

185 F.3d 529 (6th Cir. 1999); *Alabama ex rel. Graddick v. Veterans Admin.*, 648 F. Supp. 1208, 1211 (M.D. Ala. 1986). Similarly, since *DOE*, the U.S. Comptroller General has maintained that, given § 7418(a)'s waiver, a federal agency may be compelled "to pay a [punitive] civil penalty imposed" by a local air pollution control board. *Matter of: Use of Appropriated Funds to Provide Financial Incentives to Employees for Commuting by Means other than Single–Occupant Vehicle*, 72 Comp. Gen. 225, 228 (1993) (citing *Matter of: Nat'l Oceanic & Atmospheric Agency Payment of Civil Penalty for Violation of Local Air Quality Standards*, Op. Comptroller Gen. No. B–191747, 1978 WL 9814 (1978)).

Undoubtedly, then, North Carolina's argument with respect to § 7418(a) has real force. Nonetheless, we need not determine § 7418(a)'s precise scope, for the second provision of the Clean Air Act relied on as a waiver of sovereign immunity by North Carolina, § 7604(e), plainly reaches punitive civil penalties. That provision does not preclude removal, but it does constitute an unambiguous waiver of sovereign immunity that encompasses this case.

In full, § 7604(e) provides:

Nothing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency). Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from —

(1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or

(2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,

13

against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in the same manner as nongovernmental entities, see section 7418 of this title.

42 U.S.C. § 7604(e).

In waiving the United States' sovereign immunity as to "*any . . . remedy or sanction*," Congress granted a waiver as to *every* type of civil penalty, including those levied for punitive purposes. 42 U.S.C. § 7604(e) (emphasis added). This is so because the Supreme Court has expressly defined a "civil penalty" as "a type of remedy," *Tull v. United States*, 481 U.S. 412, 422 (1987), and held the word "'any' means 'every,'" *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1353 (2018). Accordingly, the language at issue here in § 7604(e) — "any . . . remedy or sanction" — broadly encompasses punitive civil penalties. *See United States v. Tennessee Air Pollution Control Bd.*, 185 F.3d 529, 534 (6th Cir. 1999).

The legislative history of § 7604(e) entirely accords with this unambiguous text. *See Cooper*, 566 U.S. at 299 (noting that legislative history may confirm the scope of a sovereign immunity waiver). That legislative history underscores Congress's intention to endow states with robust tools for air pollution law enforcement. Congress wrote that it "intended to resolve any question about the sanctions to which noncomplying Federal agencies . . . may be subject," and it made clear that "[t]he applicable sanctions are to be the same for Federal facilities . . . as for privately owned pollution sources." H.R. Rep. No. 95-294, at 200 (1977). "This means," Congress further explained, "that Federal

14

facilities . . . may be subject to injunctive relief (and criminal or civil contempt citations to enforce any such injunction), to civil or criminal penalties, and to delayed compliance penalties." *Id.* To that end, Congress expressly "provide[d] that a State . . . could bring a judicial or administrative action against a Federal facility or entity in a State or local court . . . pursuant to State or local law." *Id.* at 201. Finally, Congress noted its expectation that § 7604(e) would help "end any further delays, excuses, or evasions by Federal agencies and will mandate complete compliance" with state air pollution law. *Id.*

In the face of § 7604(e)'s unambiguous text and legislative history, the United States unpersuasively offers two reasons to cabin the provision's broad sweep. First, it contends that § 7604(e) is nothing more than a savings clause. This is an unquestionably accurate description of the provision's *first* sentence. But § 7604(e)'s *second* sentence — the text at issue here — provides that no "other law" shall restrict states from suing the United States in state court pursuant to state air pollution law. 42 U.S.C. § 7604(e). By empowering states to bring enforcement actions and obtain remedies and sanctions against the United States, this sentence is far more than a savings clause. Rather, it clearly "operates as a waiver of sovereign immunity." *City of Jacksonville*, 348 F.3d at 1317–18; *Tenn. Air Pollution Control Bd.*, 185 F.3d at 532.

In the alternative, the United States asks us to hold, as the Eleventh Circuit did, that even if more than a savings clause, § 7604(e)'s waiver is tethered to § 7418(a), which in turn is limited to coercive civil penalties under *DOE*'s reasoning. *See City of Jacksonville*, 348 F.3d at 1319. We cannot agree.

15

Central to the Eleventh Circuit's holding was its belief that § 7604(e) contains "no language indicating whether [it] should be read broadly to encompass punitive penalties or narrowly to exclude these penalties." *Id.* But, in fact, § 7604(e) does contain such language, for, as noted above, the critical phrase "*any . . .* remedy or sanction" unequivocally indicates that § 7604(e) encompasses *every* type of civil penalty that may be assessed "under State or local law respecting control and abatement of air pollution," 42 U.S.C. § 7604(e) (emphasis added).

Nor does the Supreme Court's analysis of the Clean Water Act in *DOE* require a different conclusion. There, the Court found that the word "'sanction' is spacious enough to cover not only . . . punitive fines, but coercive ones as well," and so relied on "[t]he term's context" — namely, its repeated proximity to the word "process" — to interpret its meaning. *DOE*, 503 U.S. at 621–23. But here, the context is different. Unlike the Clean Water Act provision at issue in *DOE*, the Clean Air Act provision at issue here does not repeatedly conjoin "sanction" with "process" or distinguish "process" from "substantive requirements." *Id.* at 623. In fact, the word "process" does not even appear in § 7604(e). Rather, "sanction" is paired with "remedy," a term the Supreme Court has held routinely connotes a "civil penalty . . . intended to punish culpable individuals." *Tull*, 481 U.S. at 422 (explaining that a provision which imposes a maximum civil penalty per violation of certain environmental laws contains just such a "remedy"). "[A]ny . . . remedy or sanction," then, undoubtedly encompasses the civil penalty that North Carolina seeks to recover here. *See* N.C. Gen. Stat. § 143-215.114A (imposing a maximum civil penalty per violation of North Carolina's air pollution laws).

16

Finally, we note that even if § 7418(a)'s waiver of sovereign immunity were limited to coercive civil penalties — a conclusion we do not reach — there is nothing to suggest that § 7604(e)'s waiver of sovereign immunity must be coextensive with that in § 7418(a). To be sure, § 7604(e)'s final sentence cross-references § 7418, stating: "For provisions requiring compliance [with state air pollution law] by the United States . . . in the same manner as nongovernmental entities, see section 7418 of this title." 42 U.S.C. § 7604(e). But, as the Supreme Court recently recognized, "cross-references" do not "prove that [two provisions] are coextensive." *Salinas v. United States R.R. Ret. Bd.*, 141 S. Ct. 691, 698 (2021).

Of course, some cross-references do expressly incorporate, amend, or harmonize provisions, but others merely "alert the reader to the existence of additional information or other material that might be of interest" and "neither affect[] the material to which [they] refer[] nor [are] in any way affected by it." F. Scott Boyd, *Looking Glass Law: Legislation by Reference in the States*, 68 La. L. Rev. 1201, 1205–06 (2008). The cross-reference in § 7604(e) serves only this latter, "informational" purpose. *Id.* It does not "incorporat[e] . . . a concept, definition, or specific analytic structure set out in" another provision, *Orquera v. Ashcroft*, 357 F.3d 413, 418–19 (4th Cir. 2003), or mandate that § 7604(e) must operate "in accordance with" another provision, *MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d 1312, 1322 (11th Cir. 2019).

Section 7604(e)'s cross-reference "simply reminds the reader that § 7418 defines the United States' burden to comply with state laws." *Tenn. Air Pollution Control Bd.*, 185 F.3d at 533. In this way, the final sentence of § 7604(e) highlights that § 7418(a) and

17

§ 7604(e) work in tandem: Whereas § 7418(a) sets forth the United States' duty to comply with state law, § 7604(e) empowers states to bring enforcement actions and obtain remedies and sanctions should the United States fail to comply with state law. Rather than signaling a narrow waiver of immunity, these complimentary provisions expressly grant states broad power to enforce their air pollution laws.

Indeed, contrary to the dissent's intimations, § 7604(e)'s "purpose" was to expand states' enforcement options. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006). As detailed above, legislative history — which the dissent ignores[2] — repeatedly demonstrates that § 7604(e) was part of a suite of provisions enacted "to provide more effective . . . enforcement tools for States . . . to bring [federal and private facilities] into compliance and to assure that they remain in compliance." H.R. Rep. No. 95-294, at 2 (1977).

Moreover, Congress enacted § 7604(e) against the backdrop of numerous state laws — like the North Carolina law at issue here — that empower state agencies to assess punitive civil penalties in order to "deter future violations." 2 DANIEL P. SELMI & KENNETH A. MANASTER, STATE ENVIRONMENTAL LAW § 16:21 (2020). Congress

---

[2] The dissent's failure to consider legislative history is curious given its heavy reliance on the Supreme Court's analysis in *Dolan v. U.S. Postal Serv.*, 546 U.S. 481 (2006). When determining the scope of a waiver of sovereign immunity in *Dolan*, the Court treated as "decisive" its prior decision in *Kosak v. United States*, 465 U.S. 848 (1984), which in turn discerned "[o]ne of the principal purposes" of the relevant statute by looking to its text *and* legislative history. *Dolan*, 546 U.S. at 487 (quoting *Kosak*, 465 U.S. at 855). Indeed, even though the Court characterized the statute's legislative history as "meager," *Kosak*, 465 U.S. at 855, it went on to examine that history at considerable length, discussing a report written by the statute's "apparent draftsman," *id.* at 856–57, the committee reports generated by both houses of Congress, *id.* at 857–58, 857 n.14, as well as testimony before various congressional committees and subcommittees (which the Court cited for evidence of the statute's three "general purposes"), *id.* at 858–61, 858 n.17.

recognized that, to the extent "State and local enforcement efforts" had been "ineffective in bringing about compliance," it was precisely because states had been unable to adequately enforce existing civil penalty provisions and had instead relied on "voluntary or negotiated compliance." H.R. Rep. No. 95-294, at 70–71 (1977) (citing U.S. COMPTROLLER GEN., REPORT TO CONGRESS: ASSESSMENT OF FEDERAL AND STATE ENVIRONMENT EFFORTS TO CONTROL AIR POLLUTION FROM STATIONARY SOURCES (1973)).[3] In fact, Congress was so convinced of the efficacy of punitive civil penalties that, at the same time it enacted § 7604(e), it empowered the Environmental Protection Agency to "recover a civil penalty of not more than $25,000 per day" from any "person," including "any agency, department, or instrumentality of the United States," "for each violation" of the terms of a state implementation plan or permit. 42 U.S.C. §§ 7413(b), 7602(e). Section 7604(e)'s broader purpose and context thus confirm that its text means what it says: Congress sought to remove all barriers preventing states from "obtaining any judicial remedy or sanction" against federal facilities, including penalties that Congress believed were necessary to deter noncompliance. 42 U.S.C. § 7604(e).

Accordingly, we conclude that the Clean Air Act unambiguously and unequivocally waives the United States' sovereign immunity as to *all* civil penalties assessed pursuant to state air pollution law, including punitive penalties like the one at issue here.

---

[3] Since the enactment of § 7604(e), states as varied as Washington, Alabama, Tennessee, and California have recovered punitive civil penalties from federal facilities pursuant to their state air pollution laws. *See* Kenneth M. Murchison, *Waivers of Immunity in Federal Environmental Statutes of the Twenty-First Century: Correcting A Confusing Mess*, 32 Wm. & Mary Envtl. L. & Pol'y Rev. 359, 380–82, 385 (2008).

IV.

For these reasons, while the district court correctly concluded that the Clean Air Act does not prevent removal, it erred in holding that the Act does not waive the sovereign immunity of the United States.  Thus, the judgment of the district court is

*AFFIRMED IN PART, REVERSED IN PART,*
*AND REMANDED FOR FURTHER PROCEEDINGS*
*CONSISTENT WITH THIS OPINION.*

AGEE, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority opinion that 28 U.S.C. § 1442(a)(1) authorized the United States to remove this civil action to federal court. However, I disagree with its conclusion that the Clean Air Act ("CAA" or "the Act") contains an unequivocal waiver of sovereign immunity for claims seeking purely punitive relief. Therefore, I respectfully concur in part and dissent in part.

I.

The majority opinion ably sets out the underlying facts and statutory framework in this case. I fully agree with its conclusion that 28 U.S.C. § 1442(a)(1)—the federal officer removal statute—authorized the United States to remove this case and that 42 U.S.C. § 7604(e)'s language preserving a State's right to "obtain[] any judicial remedy or sanction in any State or local court" does not operate as a narrow exception to that general removal power. For these reasons, I join Sections I and II of the majority opinion.

I part ways, however, with respect to the majority opinion's sovereign immunity analysis. As the district court concluded and the Eleventh Circuit held in *City of Jacksonville v. Department of the Navy*, 348 F.3d 1307 (11th Cir. 2003), the text of the CAA does not "waive the federal government's sovereign immunity from punitive penalties." *Id.* at 1320. This conclusion rests on the text of the CAA's relevant provisions, 42 U.S.C. §§ 7418(a) and 7604(e), as well as the Supreme Court's analysis of a nearly identical provision of the Clean Water Act ("CWA") in *United States Department of Energy v. Ohio* (*DOE*), 503 U.S. 607 (1992). For the reasons that follow, I would affirm

21

the district court's order dismissing this case for lack of jurisdiction. Therefore, I respectfully dissent from Section III of the majority opinion.

## A.

North Carolina sued the United States to collect a civil penalty and investigative costs levied against the U.S. Marine Corps Air Station Cherry Point after a January 2016 test revealed that a boiler was emitting more metallic hazardous air pollutants than authorized by the facility's permit issued pursuant to the CAA. Because the station had since replaced the boilers, there were no allegations of potential future violations. Nor did the State seek to enjoin or compel future conduct. As a result, the only relief North Carolina sought was a judgment against the United States for past acts in the amount of $8,472.00 plus accrued interest to the date of the complaint. Because this relief would penalize the United States for past violations, it is appropriately designated as a "punitive" fine. *See DOE*, 503 U.S. at 613–14 (describing "punitive" fines as being "imposed to punish past violations of [the Clean Water Act] or state laws supplanting [it]").

But just because North Carolina wants to recover punitive relief from the United States does not mean it can. As a sovereign, the United States enjoys immunity from suit unless it has consented to be sued, and "the 'terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). A sovereign's consent "must be unequivocally expressed," *United States v. Nordic Vill., Inc.*, 503 U.S. 30, 33 (1992) (citation and internal quotation marks omitted), meaning that a waiver of federal sovereign immunity "will not be implied," *Lane v. Peña*, 518 U.S. 187, 192 (1996);

22

*accord Soriano v. United States*, 352 U.S. 270, 276 (1957) ("[T]his Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied."). Thus, except as Congress has consented to a cause of action against the United States, there is no jurisdiction . . . to entertain suits against the United States." *United States v. Testan*, 424 U.S. 392, 399 (1976) (internal quotation marks omitted). That means that a purported waiver "must be strictly construed in favor of the sovereign, and not enlarged beyond what the language requires." *Nordic Vill.*, 503 U.S. at 34 (citations, alterations, and internal quotation marks omitted). Simply put, for a waiver of sovereign immunity to extend to punitive relief, the waiver "must be unequivocally expressed in [the] statutory text." *Lane*, 518 U.S. at 192. Here, the text of the Act does not contain the requisite unequivocal expression to abrogate sovereign immunity. Therefore, the district court correctly determined it lacked jurisdiction over North Carolina's claim.

B.

At issue are two provisions of the CAA, 42 U.S.C. §§ 7418(a) and 7604(e). Although the majority opinion did not fully grapple with the text of § 7418(a) and rested its analysis instead on the text of § 7604(e), examining both statutes reveals the errors in its conclusion that the CAA contains an unequivocal waiver of federal sovereign immunity from punitive fines.

1.

Section 7418(a), known as the federal facilities provision, generally subjects the United States to the CAA's requirements (with exceptions set out elsewhere), stating:

> [The United States] shall be subject to, and comply with, all Federal, State, interstate, and local requirements, administrative authority, and process and sanctions respecting the control and abatement of air pollution in the same manner, and to the same extent as any nongovernmental entity. The preceding sentence shall apply (A) to any requirement whether substantive or procedural . . . , (B) to any requirement to pay a fee or charge imposed . . . to defray the costs of . . . air pollution regulatory program[s], (C) to the exercise of any Federal, State, or local administrative authority, and (D) to any process and sanction, whether enforced in Federal, State, or local courts, or in any manner.

§ 7418(a). Pointing out that the statute subjects the United States to "all . . . process and sanctions" concerning air pollution and later, in subparagraph (D) "to any process and sanction," North Carolina contends that § 7418(a) unequivocally waives federal sovereign immunity from civil penalties such as the fine and investigative costs it sought in this case.

In considering what this statutory text means, the district court properly recognized that "[a]ny interpretation of this provision is necessarily guided by the Supreme Court's decision in *DOE v. Ohio*, where it interpreted nearly identical language in the CWA's federal facilities provision," 33 U.S.C. § 1323(a). J.A. 53. With minor differences, the pertinent CWA statute tracks the above-quoted provisions of the CAA.[1]

---

[1] Most of the wording differences relate to the regulated conduct being "water" versus "air." In addition, the CAA adds one category to which "[t]he preceding sentence shall apply." *Compare* 33 U.S.C. § 1323(a), *with* 42 U.S.C. § 7418(a) (adding as subparagraph (B) "any requirement to pay a fee or charge imposed by any State or local (Continued)

24

In *DOE*, the Supreme Court rejected Ohio's argument "that the statute's use of the word 'sanction' must be understood to encompass [punitive] fines." 503 U.S. at 620. In doing so, the Court pointed to both the term's stand-alone meaning and its pairing with the word "process" within the specific provision at issue. *Id.* at 621–23. For example, the Supreme Court observed that "the meaning of 'sanction' is spacious enough to cover not only what we have called punitive fines, but coercive ones as well, and use of the term carries no necessary implication that a reference to punitive fines is intended." *Id.* at 621. The Court then noted that "examples of usage in the coercive sense abound," citing almost a dozen instances where the term "sanction" was used to reflect coercive rather than punitive relief. *Id.* at 621–22. Based on these exemplars, the Court concluded that "resort to a 'sanction' carries no necessary implication of the punitive as against the coercive." *Id.*

Turning to the context in which the word "sanction" was used in the CWA's federal facilities provision, the Supreme Court concluded that any clarification that the context provided "cut[] against Ohio's position" that the text waived immunity from claims for punitive fines. *Id.* at 622. This was so given that both times the word "sanction" appeared in the provision, it was "within the phrase 'process and sanction[s].'" *Id.* (alteration in

agency to defray the costs of its air pollution regulatory program" and changing the corresponding letters for the last two categories). Further, the CWA's federal facilities provision adds a few provisions that either do not appear in or have been moved to other subsections of the CAA, only one of which is invoked in this appeal. Lastly, as discussed in greater detail later in the analysis, the CWA contains the following limitation that does not appear in the CAA: "the United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court." 33 U.S.C. § 1323(a).

original). The Court identified three "features of this context [as] significant." *Id.* at 623. First, subparagraph (A) of the provision "distinguished" substantive requirements from judicial processes, "even though each might require the same conduct." *Id.* Second, the word "sanction[s]" appeared in "conjunction" with "process" rather than "with the substantive 'requirements' . . . in each of the two instances in which" it appeared. *Id.* That was notable in the Supreme Court's view because "'[p]rocess' normally refers to the procedure and mechanics of adjudication and the enforcement of decrees or orders that the adjudicatory process finally provides." *Id.* Third, "the statute's reference to 'process and sanctions' as 'enforced' in courts or otherwise" implicated the "common[] understand[ing] that 'requirements' may be enforced either by backward-looking penalties for past violations or by the 'process' of forward-looking orders enjoining future violations." *Id.* In sum, "that the text speaks of sanctions in the context of enforcing 'process' as distinct from substantive 'requirements' is a good reason to infer that Congress was using 'sanction' in its coercive sense, to the exclusion of punitive fines." *Id.*

To this point, the relevant text of the CWA's and CAA's federal facilities provisions is substantively identical and the Supreme Court's analysis of that text in the CWA applies with equal force to understanding the meaning of "sanctions" as used in the CAA. The same dictionary definition and stand-alone understanding of the term "sanctions" leads to the conclusion that "use of the term carries no necessary implication that a reference to punitive fines is intended" in the CAA. *Id.* at 621. Further, the context in which "sanction" is used indicates its use in the forward-looking sense. Namely, the CAA's federal facilities provision distinguishes substantive and procedural requirements in subparagraph (A); the

word "sanction" appears twice and is used only in conjunction with the word "process" each time it appears; and the provision refers to such "'process and sanctions' as 'enforced' in courts or otherwise." *Id.* at 622–23; *see* 42 U.S.C. § 7418(a). Therefore, as was true in *DOE*, there exists in this case "good reason to infer that Congress was using 'sanction' in its coercive sense, to the exclusion of punitive fines." 503 U.S. at 623.

The above analysis aligns with the only circuit court decision to consider the meaning of "sanction" in § 7418(a). Following much the same path described above, the Eleventh Circuit reviewed the text of § 7418(a), its similarity to the relevant provisions of the CWA, and the Supreme Court's discussion in *DOE* to conclude that § 7418(a) waived immunity only from coercive sanctions. *City of Jacksonville*, 348 F.3d at 1314–16; *see also id.* at 1316 ("[W]e follow the Supreme Court's reasoning and conclude that because the text uses the term 'sanction' in the context of enforcing 'process' as opposed to substantive 'requirements,' there is 'good reason to infer that Congress was using "sanction" in its coercive sense, to the exclusion of punitive fines.'").

Notwithstanding these textual overlaps, North Carolina contends that the CAA's use of "sanction" should be construed differently than in *DOE*, in part, because its federal facilities provision lacks a limitation found in the CWA. That CWA proviso states: "[T]he United States shall be liable only for those civil penalties arising under Federal law or imposed by a State or local court to enforce an order or the process of such court." § 1323(a). In North Carolina's view, the absence of similar language in the CAA shows that Congress did not intend for the United States to be liable to States only for remedies that are forward-looking and coercive. In doing so, it points to the Supreme Court's later

27

discussion of this proviso to argue that *DOE* does not control interpretation of the term "sanction" in § 7418(a).

North Carolina's argument ignores the textual and principal contextual analysis in *DOE*, as recited above, which shows an identical match otherwise between the CAA and the CWA. It also misapprehends what the Supreme Court in *DOE* said about the CWA proviso. Specifically, the Supreme Court concluded that the sentence was relevant to interpreting "sanction" as used earlier in the CWA's federal facilities provision only insofar as it served a "clarifying function," and that "as a clarifier the proviso *speaks with an uncertain voice*." 503 U.S. at 624 (emphasis added).

To the extent the CWA's available civil penalties were modified by the phrase "imposed by a State or local court to enforce an order or the process of such court," the Supreme Court recognized that it "serve[d] to confirm the reading we reached above." *Id.* As the Eleventh Circuit correctly recognized, the proviso's language "did not serve as the basis for the Supreme Court's decision in [*DOE*]" but "simply *confirmed* the conclusion it had already reached in analyzing the phrase 'process and sanctions.'" *City of Jacksonville*, 348 F.3d at 1317.

The Supreme Court then turned to the proviso's other modifier to civil penalties ("arising under Federal law") and concluded it was more "problematical" because it could be interpreted to support the inclusion of punitive fines. *Id.* Ultimately, however, the Supreme Court concluded that this reading would "raise a new and troublesome question about the source of the legal authority to impose such a fine" and it rejected that interpretation. *Id.*; *see also id.* at 624–27. Given the absence of a "satisfactory answer" as

28

to what effect the proviso had on understanding the meaning of "sanctions" earlier in the statute, the Supreme Court turned instead to general principles governing waivers of sovereign immunity. *Id.* at 627. In short, waiver will be found only when Congress uses unambiguous language to that effect, and that clarity was lacking:

> We . . . have a response satisfactory for sovereign immunity purposes to the tension between a proviso suggesting an apparently expansive but uncertain waiver and its antecedent text that evinces a narrower waiver with greater clarity. For under our rules that tension is resolved by the requirement that any statement of waiver be unequivocal: as against the clear waiver for coercive fines the indication of a waiver as to those that are punitive is less certain. The rule of narrow construction therefore takes the waiver no further than the coercive variety.

*Id.*

The Supreme Court's analysis of the "uncertain voice" of the proviso to the CWA's federal facilities provision demonstrates the flaw in North Carolina's argument with regard to the CAA. The Supreme Court only viewed the proviso as a possible way of *expanding* the meaning of the earlier, *more restrictive* statutory language, which it had already concluded would not demonstrate waiver of immunity from punitive penalties with or without the proviso. To reiterate the Supreme Court's own description: the "antecedent text . . . evince[d] *a narrower waiver* with greater clarity" than the proviso potentially demonstrated. *Id.* (emphasis added). Accordingly, because the CAA's federal facilities provision contains only the narrower "antecedent text" as contained in the CWA, *DOE*'s reasoning necessarily leads to the conclusion that the CAA does not waive federal sovereign immunity for punitive fines. *City of Jacksonville*, 348 F.3d at 1317 ("[T]he absence of [the CWA's proviso] in § 7418(a) of the CAA does not make any kind of

29

affirmative statement. . . . [T]he only affirmative and unequivocal language indicating the scope of the government's immunity is within the language we analyzed above discussing 'process and sanctions.'"). Instead, because § 7418(a) unequivocally—and only—contains the "narrower waiver," under *DOE*, it must be interpreted as solely "waiv[ing] the federal government's sovereign immunity from coercive sanctions, but not from punitive penalties." *Id.*

At bottom, § 7418(a) does not contain the requisite waiver of federal sovereign immunity for punitive fines necessary for North Carolina to pursue its claim against the United States. Therefore, Congress must have unequivocally expressed that intent in another statute for federal courts to have jurisdiction to entertain a case that only seeks punitive relief.

2.

The second statute North Carolina relies on to support its argument is 42 U.S.C. § 7604, which authorizes citizen enforcement actions. Specifically, § 7604(e) recognizes that the citizen suit authorized and described in the preceding subsections was not meant to "restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any emission standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)." I agree with the majority—and the Sixth and Eleventh Circuits—that this first sentence is "a savings clause providing only that the citizen suit provision does not preempt any other available remedies." *City of Jacksonville*, 348 F.3d at 1317–18; *accord United States v. Tenn. Air Pollution Control Bd.*, 185 F.3d 529, 532 (6th Cir. 1999); Maj. Op. 15.

However, I disagree with the United States' argument that the remainder of § 7604(e) only operates as a savings clause. But I also disagree with the majority opinion's conclusion that it unequivocally waives immunity from punitive fines. The remainder of that provision states:

> Nothing in this section or in any other law of the United States shall be construed to prohibit, exclude, or restrict any State, local, or interstate authority from—
>
> > (1) bringing any enforcement action or obtaining any judicial remedy or sanction in any State or local court, or
> >
> > (2) bringing any administrative enforcement action or obtaining any administrative remedy or sanction in any State or local administrative agency, department or instrumentality,
>
> against the United States, any department, agency, or instrumentality thereof, or any officer, agent, or employee thereof under State or local law respecting control and abatement of air pollution. For provisions requiring compliance by the United States, departments, agencies, instrumentalities, officers, agents, and employees in the same manner as nongovernmental entities, see section 7418 of this title.

§ 7604(e).

Unlike the first sentence of subsection (e), this remaining text does more than operate as a savings clause; it empowers state, local, and interstate authorities to bring enforcement actions in state court and state administrative proceedings. The United States thus is incorrect in arguing that this second part of subsection (e) does no more than reiterate the first sentence of the subsection. By authorizing state, local, and interstate authorities to pursue particular avenues of redress, this later language waives federal sovereign immunity for certain suits by those entities regardless of where they pursue their

31

permitted claims. The text makes clear that Congress intended to give state, local, and interstate authorities the ability to pursue those claims in both judicial and administrative proceedings. Nonetheless, that still leaves the separate question of what rights exist and, for purposes of this appeal, what relief those entities can seek against the United States.

To be sure, in isolation, authority to "obtain[] any judicial remedy or sanction," § 7604(e)(1), could encompass authority to seek punitive fines. But as *DOE* recognized, language authorizing "any . . . sanction" "carries no *necessary* implication that a reference to punitive fines is intended." 503 U.S. at 621 (emphasis added). That the phrase "any judicial remedy or sanction" in § 7604(e)(1) *could* refer to punitive fines does not *necessarily* mean that is what Congress intended the phrase to mean. *See City of Jacksonville*, 348 F.3d at 1318 (relying on *DOE* to conclude that "the phrase 'remedy or sanction,' by itself, 'carries no necessary implication that a reference to punitive fines is intended'" (quoting 503 U.S. at 621)). Further contextual analysis is needed to understand the phrase's meaning.

When considering the meaning of statutory text—especially in the context of understanding whether it contains the sort of unequivocal language required to constitute a waiver of sovereign immunity—words cannot be considered in isolation, but must be understood according to the purpose and context in which the text appears. The Supreme Court's analysis in *Dolan v. United States Postal Service*, 546 U.S. 481 (2006), is instructive on this point. There, the Supreme Court was confronted with the task of determining whether a plaintiff's claims fell within an exception to the Federal Tort Claims Act's waiver of sovereign immunity from suits involving torts committed by federal

employees. *Id.* at 483. The Supreme Court was required to determine the meaning of the phrase "negligent transmission," as used in 28 U.S.C. § 2680(b), and observed that "considered in isolation," it "could embrace a wide range of negligent acts committed by the Postal Service" given that "in ordinary meaning and usage, transmission of the mail is not complete until it arrives at the destination." *Id.* at 486. But the Court recognized that "[t]he definition of words in isolation . . . is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of its definitional possibilities." *Id.* Instead, the proper "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Id.* Doing so in *Dolan* led the Court to interpret "negligent transmission" more narrowly than considering the phrase in isolation would have allowed. *Id.* at 486–90.

Applying these standard principles here, § 7604(e) contains "no language indicating whether the phrase should be read broadly to encompass punitive penalties or narrowly to exclude these penalties." *City of Jacksonville*, 348 F.3d at 1319. The majority opinion overemphasizes § 7604(e)'s use of the modifier "any" to bolster its contrary view. However, that is only one part of the phrase and does not aid in understanding the meaning of the key words "remedy" and "sanction," both of which taken in isolation have many possible interpretations. *See DOE*, 503 U.S. at 621; *see also Booth v. Churner*, 532 U.S. 731, 737–38 (2001) (observing that the various dictionary definitions of "remedy" did not provide "anything conclusive" regarding the meaning of a statute's reference to "available" "administrative remedies"). What is more, the phrase at issue in *DOE* also contained the

33

same modifier "any," yet the Supreme Court still determined a narrower reading of the nouns it modified—"process and sanction"—was warranted. *See* 33 U.S.C. § 1323(a); *cf. DOE*, 503 U.S. at 620–27. So while "any" has a role, it can only refer to a "remedy or sanction" that may be levied against the United States under the CAA. As the Eleventh Circuit correctly concluded, § 7604(e)'s "lack of any clarifying language" as to the meaning of "remedy or sanction" "does not give this Court the authority to presume that Congress intended the broadest conceivable definition of 'remedy or sanction.'" *City of Jacksonville*, 348 F.3d at 1319. That's particularly true within the scope of determining whether statutory language waives sovereign immunity because such language "will be strictly construed, in terms of its scope, in favor of the sovereign," *i.e.*, in favor of preserving immunity. *Lane*, 518 U.S. at 192.

Looking to the context in which the terms "remedy" and "sanction" appear, one need look no further than to the last sentence of the same subsection to identify a meaningful limitation: "For provisions requiring compliance by the United States . . . in the same manner as nongovernmental entities, see section 7418 of this title." § 7604(e). Thus, § 7604(e), in context, explicitly informs readers that the two statutes bear on each other. In holding otherwise, the majority opinion trivializes the essential information provided in this cross-reference. That is to say, whatever authorization § 7604(e) provides—including the scope of when a state can pursue "any judicial remedy or sanction"—must be understood in light of what duties the United States has in the first place, which are set out in § 7418.

And this makes sense. Section 7604, and subsection (e) in particular, address various logistical aspects of how and where the United States can be held accountable; it's an enforcement provision. When it enacted § 7604(e), Congress expanded upon what had previously been available in that regard. In so doing, however, it did not alter which substantive and procedural aspects of the Act require compliance by the United States. That information is instead set out in § 7418. Section 7604(e)'s language authorizes states to obtain any judicial remedy or sanction to which the United States is liable under § 7418, but it extends no further. No state can "obtain[] any judicial remedy or sanction" against the United States for something § 7418 does not oblige it to do.

Once this interconnectedness between the statutes is understood, the remaining analysis is straightforward. The phrase "obtaining any judicial remedy or sanction" as used in § 7604(e) must be understood in terms of what compliance is required of the United States through § 7418. As discussed earlier, § 7418(a) subjects the United States to "process and sanctions," a phrase that encompasses coercive remedies, "to the exclusion of punitive fines." 503 U.S. at 623. Accordingly, § 7604(e)'s use of the phrase "judicial remedy or sanction" is similarly limited in scope. Put another way, because § 7418(a) does not subject the United States to the Act's requirement that violators of its standards pay punitive fines, states have no jurisdictional basis to obtain any judicial relief or sanctions in the form of punitive fines under § 7604(e). This construction interprets the statutory language not in isolation, but by "reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." *Dolan*, 546 U.S. at 486; *accord City of Jackson*, 348 F.3d at 1319–20 (observing

35

that this construction "interprets [§ 7604(e)] in light of the remainder of the statute of which it is a part," and "declin[ing] the invitation to find that Congress intended to waive the federal government's sovereign immunity from punitive penalties" (quoting *Tenn. Air Pollution*, 185 F.3d at 534). Accordingly, § 7604(e) cannot be the basis for the district court to have jurisdiction over North Carolina's claim for a punitive fine against the United States.

The majority opinion criticizes the foregoing as inconsistent with the legislative history of § 7604(e). As a matter of first principles, statutory interpretation ordinarily begins and ends with the text of the statute, which includes its statutory context. *See Am. Tobacco Co. v. Peterson*, 456 U.S. 63, 68 (1982) ("As in all cases involving statutory construction, our starting point must be the language employed by Congress, and we assume that the legislative purpose is expressed by the ordinary meaning of the words used. Thus, absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." (internal quotation marks and citations omitted)); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007) ("[T]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context[.]" (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000)). Nontextual sources may be confirmatory of that textual understanding— such as how the Supreme Court used legislative history in *Kosak v. United States*, 465 U.S.

36

848, 855 (1984).[2] But the Supreme Court has clearly established that legislative history can never be used to identify a waiver not clearly provided for in the statutory text: "A statute's legislative history cannot supply a waiver that does not appear clearly in any statutory text; the unequivocal expression of elimination of sovereign immunity that we insist upon is an expression in statutory text." *Lane*, 518 U.S. at 192 (internal quotation marks omitted) (quoting *Nordic Vill.*, 503 U.S. at 37). Although § 7604(e)'s legislative history reveals Congress' broad purpose of expanding the available enforcement tools for States, that history cannot be the basis for construing the enacted statutory language more broadly than the text and context of the statute permits. For the reasons set out earlier, the text and context of § 7604(e) does not contain a clear statement waiving federal sovereign immunity from punitive fines.

## II.

A statute must unequivocally waive federal sovereign immunity before a court is entitled to conclude that Congress intended to waive that immunity. For purposes of this case, no such unequivocal text appears in §§ 7418(a) or 7604(e) that waives immunity from punitive fines. For that reason, the majority opinion errs in finding that the Act waives the

---

[2] In *Kosak*, the Supreme Court first undertook the textual and contextual analysis, reaching its conclusion as to the meaning of the statutory language at issue. 465 U.S. at 852–55. Only after that analysis, did it comment on the statute's "meager" legislative history providing "support[]" for the "interpretation we have derived from its language and context." *Id.* at 855.

United States' immunity from punitive penalties. I respectfully dissent from that part of the majority opinion.